A99A0104. NUNEZ v. THE STATE.
(516 SE2d 357)

Judge Harold R. Banke.

Agustin Nunez was convicted of two counts of cruelty to children. He enumerates seven errors on appeal.

This case arose after Nunez and his wife (and codefendant) drove their two-year-old daughter to the emergency room of their local hospital. The child was near death due to a tear in her small intestine usually caused by "a very focused, discrete, forceful blow to the upper abdomen." Over time, waste had emptied into her abdominal cavity, causing it to become infected and swell noticeably. Her doctor theorized that the injury had occurred as long as three days before and serious distress would have been apparent at least a day after the injury. Nurses observed severe bruising on her back, buttocks, legs and hands and scratches on the child's face. X-rays revealed a rib fracture, broken clavicles on both the right and left, and fractures of both the upper arm and left elbow. Many of these injuries had occurred at different times over a three week period.

After emergency resuscitation, the child underwent surgery to correct the intestinal tear. Emergency room personnel contacted law enforcement and the Department of Family & Children Services, suspecting child abuse. After an investigation, both Nunez and his wife were arrested. The two count indictment charged Nunez with (1) causing the injuries and (2) failing to seek medical care. *Held*:

1. The evidence, viewed in the light most favorable to the verdict, is sufficient to satisfy each element of the charges.[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Cruelty to children requires proof that the accused maliciously caused cruel or excessive physical or mental pain to a child under the age of 18. OCGA § 16-5-70 (b). The child's treating physician testified that "[t]he combination of the type of injury that she had to her abdomen, the length of time that she had had that injury, her overall physical state with the kidney failure and stopping breathing, the bruises from head to toe, the fractures from multiple time periods" left "no doubt" that she had been physically abused. He also testified that in a significant number of cases, immediate family members inflict such abuse and if anyone else had inflicted the types of injury the child had, the family would have sought immediate medical attention.

The record further shows that Nunez, his wife, and the child lived in a small apartment and that the child slept in the same room with her parents. Nunez admitted that he had been with the child until around 2:30 p.m. the day before she was hospitalized. Around 9:00 p.m., the wife called Nunez at work to tell him the baby was sick and she needed him. Although he left work, he did not seek medical attention for the child until after 8:00 a.m. the next morning, although the child's suffering was apparent. When Nunez dropped his wife and baby at the hospital, he did not enter the emergency room, but waited outside in the ambulance bay. The record shows that Nunez used a false name and gave conflicting reports on his whereabouts on the night before the child was hospitalized.

During the investigation, the wife attempted to inculpate a babysitter. However, she could not give an address or location for the babysitter, notwithstanding the fact that she told detectives that she had dropped the child off at the babysitter's home. Although authorities located a woman with the same name Nunez's wife gave them, she did not match the description. When confronted with this fact, the wife gave another name, but no one matching that description was found.

The record shows that neither parent filed a complaint against

---

[1] In several enumerations, Nunez raised the general grounds. See *Stinson v. State*, 185 Ga. App. 543, 544 (364 SE2d 910) (1988) (asserting the general grounds results in consideration only of the sufficiency of the evidence).

the alleged babysitter and that many of the baby's injuries occurred over several weeks, a period in which Nunez was present in the household, not during the short time span the babysitter purportedly kept the child. It also shows that the child would have been in obvious pain during that time. The evidence against Nunez, while not overwhelming, was sufficient to permit the jury to find that he was, at a minimum, a party to the crimes. OCGA § 16-2-20 (b) (3).

2. Nunez seeks reversal due to the trial court's failure to charge that the jury had the option to find one codefendant guilty and the other not guilty on either or both of the charges.

In cases with multiple defendants, our Supreme Court encourages trial courts "to give a separate instruction which details the jury's duty to consider each charge in the indictment against each defendant separately and which reminds the jury that the guilt of one defendant does not require the return of a guilty verdict against the other defendant." *Nicholson v. State*, 265 Ga. 711, 714 (3) (462 SE2d 144) (1995). To determine whether the absence of this unrequested instruction harmed Nunez, the charge must be considered in its entirety. Id. at 713.

Here, the trial court charged on mere presence and parties to a crime. It also reminded the jury that "you have two defendants and . . . two counts and each of these is a case. Each count is a case against each of these defendants and you should make a verdict as to each defendant and as to each count." Later, in discussing the verdict form, which set out the separate counts for each defendant, it reiterated that "you have two defendants and you should let your verdict speak to that very clearly." While a charge reflecting that the conviction of one defendant did not necessarily require the conviction of the other is certainly preferable, we find no reversible error here. Id.

3. Nunez claims the trial court erred in excluding the deposition testimony of Dr. Hawkins, who had been subpoenaed but failed to appear for trial. Nunez maintains Dr. Hawkins was unavailable and the exclusion of his deposition testimony that the bruises covering the baby's body could have been caused by lividity from the abdominal injury rather than beatings violated his right to confrontation and to present evidence.

The record shows that at the direction of counsel for Nunez's wife, local law enforcement delivered a subpoena for Dr. Hawkins to the director of the emergency room where he worked at sometime during the afternoon before he was called as a witness. Dr. Hawkins came into work later that evening, but counsel was unsure whether he received the subpoena. After hearing these details, the trial court sustained the State's objection to the admission of Dr. Hawkins' deposition, observing, "I guess technically speaking, he was not subpoenaed." Counsel responded, "Not by the defense, your honor, that I can

tell. The Sheriff's office left it with someone other than him."

Assuming without deciding that Nunez may properly assert this argument, a party seeking the admission of prior testimony must show that the witness is unavailable. *Rivers v. State*, 265 Ga. 694, 696 (5) (461 SE2d 205) (1995). The record shows that Dr. Hawkins was at work in the local emergency room the day before the trial. Absent a showing that the witness could not with due diligence be found within the State, we cannot say the trial court's refusal to admit such testimony was an abuse of discretion. Id. Moreover, it appears that defense counsel acquiesced to the trial court's ruling. *Cherry v. State*, 230 Ga. App. 443, 445 (3) (496 SE2d 764) (1998).

4. Nunez argues that the trial court erred in denying his motion to sever his trial from his wife's to permit the admission of his written custodial statement inculpating his wife and partially exonerating himself. Notwithstanding the State's successful objection to its admission on the ground that it contained self-serving hearsay, Nunez maintains that the statement was admissible as an "admission against penal interest" because it showed he failed to seek timely medical assistance.[2] We disagree.

It is well-settled that self-serving statements made by the accused, either before or after the commission of the alleged offense, are inadmissible hearsay. *Smith v. State*, 144 Ga. App. 294 (1) (241 SE2d 14) (1977); *Lane v. Tift County Hosp. Auth.*, 228 Ga. App. 554, 560-561 (2) (492 SE2d 317) (1997); see also *Turner v. State*, 267 Ga. 149, 154 (3), n. 3 (476 SE2d 252) (1996) (Georgia does not recognize declarations against penal interest as an exception to the hearsay rule).

Moreover, defendants seeking severance must show more than the mere possibility that a separate trial would have provided a better chance of acquittal. *Berry v. State*, 267 Ga. 605, 611 (9) (481 SE2d 203) (1997). Nunez's failure to clearly demonstrate prejudice and a concomitant denial of due process precludes a finding that the trial court abused its discretion in denying the motion to sever. Id.

5. Nunez maintains the trial court erred in admitting out-of-court statements he made to an investigator through an interpreter who was not called as a witness. Having reviewed the record, we find that Nunez failed to articulate a specific objection to the admission of the officer's testimony or the State's failure to call the translator. *Perry v. State*, 214 Ga. App. 444, 445 (1) (448 SE2d 74) (1994).

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

---

[2] Nunez's statement indicated that when he arrived home from work, the child was vomiting and very ill, and his wife told him the babysitter had hit her. Nunez also stated that his wife had hit the child five times with a belt before he left for work and 10 or 12 times on several other occasions.

DECIDED APRIL 13, 1999 —
RECONSIDERATION DENIED APRIL 29, 1999 —

*Roland R. Castellanos*, for appellant.
*Kermit N. McManus, District Attorney, Stephen E. Spencer, Dixon A. Lackey III, Assistant District Attorneys*, for appellee.