A95A0236. NEWSOME v. THE STATE.
(457 SE2d 232)

Birdsong, Presiding Judge.

Randy Lee Newsome was convicted of aggravated child molestation. He contends the trial court erred in refusing his request to charge on circumstantial evidence.

The victim was the three-year-old son of appellant's cousin. The child's mother, who lived with her children and husband in her parents' trailer home, testified that on July 5, 1993, appellant visited her home. During appellant's visit, the mother took a nap; she also heard appellant talking about a barbecue. Appellant stated that he wanted to check on the corn in the field behind the trailer. The three-year-old child was allowed to go to the cornfield with him. The mother went to the store briefly with her sister and returned. About 30 or 45 minutes after appellant and the child had been in the cornfield, relatives hollered for appellant; appellant came back from the cornfield, holding the child on his hip. Appellant put the child down. After appellant left in his car, the child immediately came into the house and said: "My butt hurts." He looked like he was crying. His mother asked, "Why does your butt hurt?" The child said, " 'Cause Randy stuck his ding-dong in my butt." His mother started shaking him and said, "He did what?" He started crying. His mother said, "Tell mama the truth." The child said again, "Randy stuck his ding-dong in my butt." The mother pulled the boy's pants down; he "really looked like he had been messed with. It was red, it was dirty." She ran with the child to her sister's home nearby and begged to be taken to the hospital; when the sister asked why, the mother pulled the boy's pants down and showed the sister. The sister took them to the hospital. The child did not use the bathroom after he told his mother what happened; "all he kept doing was holding his butt saying his butt hurt." After the molestation, the child's behavior changed completely and he began to act out sexually with other children.

The child, who was four years old at the time of trial, testified that he did not like appellant; he remembered going to a cornfield with appellant; in the cornfield "Randy stick his thing in my butt" and it made him cry; when he came out of the cornfield he told his mother what appellant had done and he was taken to the hospital. He denied that any other boy "did it" to him.

The child's aunt, who is the mother's sister, testified that on July 5, 1993 she had been at the child's house where her parents also lived; she did not see appellant that day but she saw his car. After going to the store with the child's mother, she went home. The child's mother "brought him to me screaming and crying, and [the child] was crying. And [the mother] asked me to take her to the emergency room"; the child told her "Randy stuck his ding-dong in his butt

[while they were] in the cornfield. . . . He just kept telling me it was hurting, and he told me that Randy did it."

The examining physician testified that on July 5, 1993 the child told her "[t]hat he had gone out into the cornfield with his [cousin and] they had been gone for about 35 or 40 minutes. . . . And then he told his mom that his — to use his words — that he had pain in his bottom because Randy had stuck his ding-dong inside his butt." The doctor testified that the child identified the perpetrator as "Randy." The physical examination revealed the child had fecal matter and redness around his rectum which were indicia that he had "some penetration into his rectum"; the examination also indicated "some type of manipulation or something in that area for it to have redness. It is hard to say what could have caused [this]." The examination results were consistent with the child's story about what had happened.

A clinical psychologist testified the mother brought the child to him in September 1993, reporting that he exhibited a higher frequency of sexual type responses and was more angry, more aggressive, was having nightmares and night fears. The psychologist testified the child "consistently and spontaneously related to me a sequence of events that has not changed a great deal over the some ten sessions that I have seen him [which is] that a person who is described as . . . an older teenager, whose name is Randy, promised him money and took him to a cornfield, pulled his trousers — pants down, and put his — as he put it, his ding-a-ling, or his penis into his butt. . . . At which point he would typically talk about how angry he was, and how scared he was and how he could not stop that. And this was a sequence of events that he has repeated a number of times."

Appellant tried to show someone else had sexually abused the boy. Appellant testified he went to the child's home because he thought he and his wife had been invited to a barbecue but when he arrived, there was no barbecue; there was drinking at the house; the only time he saw the three-year-old child was when the child was playing in the yard; he did not go to the cornfield but stood at the edge of it. *Held*:

It is now well established in this state, as held in *Mims v. State*, 264 Ga. 271 (443 SE2d 845) and *Robinson v. State*, 261 Ga. 698 (410 SE2d 116), that where the State's evidence depends in whole or in part on circumstantial evidence, a charge on circumstantial evidence must be given on request. When the State introduces both direct and circumstantial evidence, regardless how the evidence is characterized, the State's case "depends" in whole or in part on each and every item of proof introduced into evidence, for the jury may rely upon that particular item of proof to reach its verdict. It is impossible to prejudge what evidence a jury will consider in reaching its verdict. "Since

a jury could consider circumstantial evidence in every instance where it has been introduced, upon request, the trial court *must* give the charge so that the jury will be familiar with how to weigh that circumstantial evidence." *Mims*, supra at 272.

As we held in *Johnson v. State*, 210 Ga. App. 99, 100 (435 SE2d 458), "In light of [*Robinson*], a trial court positively invites reversal of a criminal conviction when it fails to give the circumstantial evidence charge whenever such a charge is requested. . . . Virtually every case contains some circumstantial evidence and, if the charge is not given, stands in danger of being reversed for clearly harmful and erroneous error. The charge is a fundamental principle of law as to criminal guilt and there is no reason not to give it; the State is not harmed by it and has no right to have it omitted." This was quoted with approval in *Mims* at fn. 2. However, we also held in *Johnson* that the refusal to give the circumstantial evidence charge in that case did not require reversal for the evidence of guilt "was overwhelming; the evidence and all reasonable deductions therefrom were completely inconsistent with a reasonable hypothesis of innocence. To reverse the convictions would be a perversion of justice. [Cits.]" Id. at 101. In *Mims* at 273, it was held that "the evidence was close enough that failure to give this charge was not harmless." Similarly, in *Ellerbee v. State*, 215 Ga. App. 102, 104 (4) (449 SE2d 874), we held the failure to give the circumstantial evidence charge, although error, was "rendered harmless by the overwhelming direct evidence" of guilt.

We have examined the evidence in this case and we find that as it happens, the failure to give the circumstantial evidence charge, though error, was harmless in the facts of this case, for the evidence and all reasonable deductions therefrom were completely inconsistent with a reasonable hypothesis of innocence; to reverse the convictions would be a perversion of justice. *Johnson*, supra. We also find the evidence sufficient under the standards of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

We note that *Robinson* was written in 1991; we wrote *Johnson* in August 1993, warning that not only is the circumstantial evidence charge required, but there is no reason *ever* to refuse to give it. This case was tried in May 1994. The failure to give the charge is an incomprehensible waste of judicial economy and an unnecessary strain on the judicial resources of the appellate court. This is particularly evidenced in this case by the necessity imposed to wade through the State's brief which frivolously argues, as if *Robinson* had never been written, that the charge was not required.

Although we find the error harmless in this case, there is no reason this error should ever occur. Since we have held that to omit it "positively invites reversal" (*Johnson*, supra at 100; see also *Mims*, supra; *Ellerbee*, supra) on appeal, an insistent refusal to give the

charge indicates that some right is perceived in the State to have it omitted. This diminished view of the State's burden of proof must be deemed potentially harmful to all criminal defendants in every case, even if the failure to give the charge happens to be harmless in this particular case.

*Judgment affirmed. Johnson and Smith, JJ., concur.*

DECIDED APRIL 11, 1995 —
RECONSIDERATION DENIED MAY 4, 1995.

*Stanley C. House*, for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.