## A00A1726. BURKS v. THE STATE.
(538 SE2d 769)

MIKELL, Judge.

On March 30, 1995, Antonio Burks was convicted of rape, burglary and kidnapping. On appeal, he contends the trial court's refusal to charge the principle of circumstantial evidence embodied in OCGA § 24-4-6 warrants reversal of his convictions. Finding the error harm-

---

[8] *Dept. of Transp. v. Dalton Paving &c.*, 227 Ga. App. 207, 224 (10) (489 SE2d 329) (1997).

[9] See *Wadkins*, supra at 140.

less, we affirm.

Evidence adduced at trial shows that the victim and Burks had had an extended relationship. The victim testified that the relationship terminated on March 13, 1994, and that one week later, she had a chance encounter with Burks on the street. Burks shoved the victim and ripped off her shirt; she scraped her knee. She went to a friend's house and called the police. The incident was witnessed by the friend, who testified at trial. Burks admitted his actions, testifying that he was unwilling to stand for the victim "disrespecting" him.

Six weeks later, the victim and her new boyfriend encountered Burks. The following morning at 3:00 a.m., the victim went downstairs to feed her infant and discovered Burks in her living room. Burks pointed a gun at the victim, who was holding the baby, and ordered her to come with him to the apartment where Burks resided with another woman. There, Burks, a former boxer, used his fist to beat the victim about the face.

The victim also testified that Burks struck and "tortured" her with his gun before he raped her. The victim identified the gun. After the attack, Burks took the victim outside. Burks told her he had enough bullets in his gun to kill her, her baby, her mother, and himself, and he fired a shot into the air. The victim returned to her apartment and called the police.

A female officer responded to the call and found the victim in tears. The victim led the officer to the apartment where the assault had taken place. Burks was there; he told the officer it was a "big misunderstanding." The victim told the officer that Burks had hit her with a board and had fired a weapon. The officer found the board as well as a shell casing close to where the victim said Burks fired the gun. The board and shell casing were admitted into evidence.

The officer testified that Burks initially denied the entire incident and later claimed that he and the victim had had consensual relations. A second officer questioned Burks, who then claimed that he and the victim had had consensual sex in an apartment belonging to "Michelle." Burks was unable to identify "Michelle" or point out the location of her apartment.

Burks testified and asserted the defense of consent. He claimed that he and the victim reconciled after he tore off her shirt in public. He further claimed they had sexual relations the day before the rape. Then, later in the day, he saw her with "some guy she said was her boyfriend." Upset, Burks could not sleep that night. He asked someone to throw rocks at the victim's window. She awoke and agreed to come outside and speak to him. Burks admitted he became angry and struck the victim but alleged he did not have a gun. Burks then testified that he apologized and the victim consented to sexual relations; that the victim left; and that he retrieved a gun he had hidden in a

vase and fired one shot. He offered no reason for doing so.

On cross-examination, Burks admitted causing the bruises on the victim's face, pictures of which were introduced into evidence. Burks also admitted that he beat the victim throughout their relationship. Additionally, Burks admitted using his fists to beat the victim's stepfather into unconsciousness when the stepfather tried to assist the victim in getting away from Burks the week after they broke up. Finally, Burks testified that when he struck the victim, he "wanted to give her physical pain for my emotional pain."

1. Burks first contends that the evidence was insufficient to support his rape conviction because the state failed to introduce evidence of penetration. Burks bases this argument on evidence that he stood behind the victim during the sex act. He therefore claims the testimony is consistent with a finding of sodomy. This argument is wholly without merit.

Under OCGA § 16-6-1, a man commits rape when he has carnal knowledge of a woman forcibly and against her will. Carnal knowledge is defined as "any penetration of the female sex organ by the male sex organ."

A medical examination of the victim conducted within hours after Burks abducted and assaulted her revealed the presence of sperm inside her vagina. The victim testified that Burks "raped [her] standing up" and that they "had sex." She also testified that she informed Burks that she was menstruating, which information would have been irrelevant unless Burks intended to penetrate her vaginally. Burks responded negatively when asked whether he saw "any blood when [he was] penetrating her and having sex with her standing in that bedroom." Accordingly, we conclude that the evidence is sufficient to authorize the jury's finding that defendant is guilty, beyond a reasonable doubt, of penetrating the victim's sex organ with his sex organ in violation of OCGA § 16-6-1.[1]

2. Trial courts are required to charge the jury on the principles of circumstantial evidence under OCGA § 24-4-6 when the state's case includes both direct and circumstantial evidence, and the defendant has requested such a charge.[2]

In this case, the trial court instructed the jury concerning the definitions of, and the differences between, direct and circumstantial evidence. The court further charged that "the comparative weight of circumstantial evidence and direct evidence on any given issue is a question of fact for you the jury to decide." However, the court refused to give Burks's written request to charge in the language of

---

[1] *Fields v. State*, 216 Ga. App. 184, 187 (2) (453 SE2d 794) (1995) (victim's testimony that defendant forced her to "have sex" with him held evidence of penetration).

[2] *Mims v. State*, 264 Ga. 271, 272 (443 SE2d 845) (1994).

OCGA § 24-4-6: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."

Burks reserved his objections to the charge. The state presented circumstantial as well as direct evidence of Burks's guilt. Accordingly, the trial court erred in refusing to give the requested charge.

The requested charge has been highly favored by the appellate courts ever since the Supreme Court's well-known decision in *Robinson v. State*.[3] The Council of Superior Court Judges in its Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2nd ed. 1999), states on page 11: "Although there may be exceptions, the Pattern Jury Instructions Committee feels it is a safer practice to give the circumstantial evidence charge *in every case*." (Emphasis supplied.)

We are surprised that some trial courts continue to resist giving the complete pattern charge even after a written request by the defendant.[4]

> In light of . . . [*Robinson,*] a trial court positively invites reversal of a criminal conviction when it fails to give the circumstantial evidence charge whenever such a charge is requested. . . . Virtually every case contains some circumstantial evidence and, if the charge is not given, stands in danger of being reversed for clearly harmful and erroneous error. The charge is a fundamental principle of law as to criminal guilt and there is no reason not to give it; the [s]tate is not harmed by it and has no right to have it omitted.[5]

However, as implied in *Mims v. State*, omitting the complete charge is not harmful error in all instances. In *Mims*, the court found "that the evidence was close enough that [the] failure to give this charge was not harmless."[6] By necessary implication, the error could be deemed harmless when the evidence of guilt is overwhelming, as it is in the case at bar. In such situations, this court has held that reversal would be a perversion of justice.[7]

---

[3] 261 Ga. 698 (410 SE2d 116) (1991).

[4] See generally *Newsome v. State*, 217 Ga. App. 379, 381 (457 SE2d 232) (1995) (Birdsong, P. J.) ("The failure to give the charge is an incomprehensible waste of judicial economy. . . .").

[5] *Johnson v. State*, 210 Ga. App. 99, 100 (435 SE2d 458) (1993) (Birdsong, P. J.), quoted with approval, *Mims*, supra at 272, n. 2.

[6] Supra at 273.

[7] See, e.g., *Johnson v. State*, 236 Ga. App. 252, 256 (3) (511 SE2d 603) (1999); *Livery v. State*, 233 Ga. App. 882, 885 (3) (506 SE2d 165) (1998); *Cornish v. State*, 219 Ga. App. 884, 885 (1) (466 SE2d 919) (1996); *Ellerbee v. State*, 215 Ga. App. 102, 104 (4) (449 SE2d 874)

In the instant case, the failure to give the circumstantial evidence charge, although error, was rendered harmless by the overwhelming evidence of Burks's guilt. The testimony of both the victim and Burks establishes that sexual relations took place. Uncontroverted expert testimony established that the victim had multiple contusions on her face as well as sperm in her vagina shortly after the attack. The beating the victim endured, which Burks admittedly inflicted, in addition to her testimony that she did not consent to sexual relations, demonstrates that she was raped. Accordingly, we hold that the evidence and all reasonable deductions therefrom are completely inconsistent with any hypothesis of innocence, and we affirm Burks's convictions.

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED AUGUST 28, 2000 —
RECONSIDERATION DENIED SEPTEMBER 15, 2000 — ▆▆▆▆▆▆▆

*Carl P. Greenberg*, for appellant.
*Paul L. Howard, Jr., District Attorney, Christopher M. Quinn, Assistant District Attorney*, for appellee.

(1994); *Johnson v. State*, supra, 210 Ga. App. at 100.