## A01A0810. OVERSTREET v. THE STATE.
### (551 SE2d 748)

PHIPPS, Judge.

Thomas Overstreet was charged with two counts each of kidnapping and possession of a firearm during the commission of a crime and one count each of murder and armed robbery. A jury found him guilty of armed robbery and not guilty of the other charges.[1] Overstreet challenges the sufficiency of the evidence to support his conviction. He also claims that the trial court erred by denying his motion for severance, allowing into evidence statements by his co-defendant, denying three motions for mistrial, allowing the jury to change forepersons during deliberations, allowing the jury to continue deliberations after announcing they were deadlocked and asking the jury the status of its deliberations. Finding the evidence was sufficient to support Overstreet's conviction and finding no reversible error, we affirm.

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence.[2] Viewed in that light, the evidence showed that on May 19, 1994, Overstreet and Larry went to Ballard Truck & Tire Company on Old Savannah Road in Augusta. Soloman Walker and his employer, Ronald Ray, were working there at the time.

Walker testified that Overstreet and Larry walked past him and began talking to Ray about purchasing tires. When Ray told them the price of the tires, Overstreet reached into his pocket, took out two $20 bills and asked Larry if he had any money. Overstreet then pulled a silver gun, pointed it at Ray and said, "I'll take what you got." When Walker went over to Ray, Larry pulled a black gun on him, told him to get on the floor and demanded whatever cash he had. After Walker gave him the $2 or $3 from his pocket, Larry searched him for more but found none. Larry then forced him to the back of the store where he told him to lie facedown on the floor. Walker complied and while on the ground heard Overstreet asking Ray for his keys. Judging from the voices, Walker estimated that Overstreet and Ray must have been close to him at the time. When Walker heard gunshots a few minutes later, he jumped up and ran out of the store. As he ran, he could see Overstreet on Old Savannah Road and heard Larry calling for Overstreet not to leave him.

---

[1] His co-defendant, Marquett Larry, was charged with the same crimes and was convicted on all counts. Larry's appeal to the Supreme Court of Georgia was decided in February 1996. *Larry v. State*, 266 Ga. 284 (466 SE2d 850) (1996). Overstreet's motion for out-of-time appeal was granted in August 1999.

[2] *Newman v. State*, 233 Ga. App. 794 (1) (504 SE2d 476) (1998).

Walker brought Mike Ballard back to the store where they discovered Ray and Larry lying on the ground. Ray was dead, and Larry was bleeding from his stomach. A silver .25 millimeter semi-automatic pistol was found beside Ray, and a black .9 millimeter semi-automatic pistol was found near Larry. The investigators never found another gun that could be connected to Overstreet.

That same day, Walker gave a statement to police. In one part of his statement, Walker basically said that Overstreet could not have run as far as he had if he had been at the store when the gunshots were fired. He stated that the gun Larry had pulled on him was on the floor near Larry when he and Ballard reached the store.

Larry testified that he was shot three times and later underwent surgery. Richmond County Sheriff's Department Investigators Bunton and Pinkston interviewed Larry the day after the incident. They first obtained permission from his doctor who informed them that he was lucid. The investigators advised Larry of his *Miranda* rights and asked if he wanted to talk to them. Larry initially said, "no," but when advised of the charges against him, changed his mind and agreed to the interview. The interview was taped and played to the jury at trial.[3]

During the interview, Larry told the investigators that he and someone else[4] went to look at tires and that while he was looking, Walker and Ray came running toward him. Although Larry never saw the gun, he guessed that his companion must have pulled a gun on them and that they were running from him. He said that Walker tried to grab him, so he pulled out his gun. Walker and Ray then both dropped to their knees, and Ray began shooting at him. At that point, Larry said, he fell to the ground and shot back. While this was happening, his companion was running across the street.

Several days later, Larry gave another taped statement to the investigators in which he told them that his companion at the tire store pulled his gun out first and then he pulled out his gun. He refused to tell them much else about the incident. At trial, Larry testified that he never saw Overstreet with a gun during the incident.

Within an hour of the shooting, investigators identified Overstreet as a suspect. He turned himself in two days later.

1. Overstreet challenges the sufficiency of the evidence supporting his conviction for the armed robbery of Walker.

He claims that his conviction was based solely on Walker's testimony and that the jury discounted most of Walker's testimony in reaching its verdict on the other counts. But "[a] jury is authorized to

---

[3] The trial court conducted a *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), hearing before admitting Larry's statements.

[4] The tape and transcript were redacted to remove any reference to Overstreet.

believe or disbelieve all or any part of the testimony of witnesses, and it serves as the arbiter of conflicts in the evidence before it."[5] The jury was authorized to believe Walker's testimony that Overstreet was there while he was being robbed by Larry and that he fled from the scene thereafter. The jury may have refused to convict Overstreet for possession of a firearm during the commission of a crime because the investigators never located the gun he allegedly used. Even if the jury refused to convict because they disbelieved part of Walker's testimony, that would not affect the jury's reliance on the remainder of his testimony.[6]

Overstreet claims that he could not be found guilty as a party to the crime of armed robbery because the jury acquitted him of the kidnapping and possession of a firearm charges relating to Walker. In essence, Overstreet argues that the verdicts are inconsistent. His argument fails because the inconsistent verdict rule in criminal cases has been abolished.[7]

Finally, Overstreet argues that the evidence does not support his conviction as a party to the crime of armed robbery. Based on Walker's testimony, the jury was authorized to conclude that Overstreet was in Walker's immediate presence when the robbery occurred. Although mere presence at the scene of a crime is insufficient to convict one as a party to the crime, "presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred."[8] Here, the jury was authorized to infer from Overstreet's physical position during the robbery and his flight from the scene shortly thereafter that he was a participant in the crime.[9]

2. Overstreet challenges the trial court's denial of his motions for severance. He claims that the overwhelming evidence against Larry also was considered against him, resulting in his conviction.

A trial judge has discretion to grant severance based on the particular facts of the case and should do so whenever it appears necessary to guarantee the defendant a fair trial.[10] When exercising its discretion, the trial court should consider such factors as

> 1. Will the number of defendants create confusion of the evidence and law applicable to each individual defendant? 2. Is there a danger that evidence admissible against one defend-

---

[5] (Citation omitted.) *Drake v. State*, 238 Ga. App. 584, 586 (1) (519 SE2d 692) (1999).

[6] Id.; see also *Allen v. State*, 203 Ga. App. 359, 360 (1) (416 SE2d 869) (1992).

[7] *Milam v. State*, 255 Ga. 560, 562 (2) (341 SE2d 216) (1986); *Allen*, 203 Ga. App. at 360.

[8] (Citation and punctuation omitted.) *Cummings v. State*, 227 Ga. App. 564, 566 (489 SE2d 370) (1997).

[9] Id.

[10] *Cain v. State*, 235 Ga. 128, 129 (218 SE2d 856) (1975).

ant will be considered against another despite the admonitory precaution of the court? 3. Are the defenses of the defendants antagonistic to each other or to each other's rights?[11]

If a defendant can show that failure to sever will prejudice him under one or more of these factors, his motion probably should be granted.[12] But an appellate court will not find that the denial of a motion for severance is an abuse of discretion unless it appears that the defendant suffered prejudice that amounted to a denial of due process.[13]

We do not find that Overstreet's conviction more likely resulted from the evidence against Larry than from the evidence against him or that a spillover of the evidence against Larry prejudiced his right to a fair trial.[14] By its verdict, the jury demonstrated clearly its ability to distinguish between the evidence against Overstreet and the evidence against Larry. We find no abuse of discretion.

3. Overstreet claims that the trial court erred by not charging the jury to consider the evidence and the application of the law as to each defendant individually.

The Supreme Court of Georgia has recognized that "it is the 'better practice' for a trial court to give a separate instruction which details the jury's duty to consider each charge in the indictment against each defendant separately and which reminds the jury that the guilt of one defendant does not require the return of a guilty verdict against the other defendant."[15] To determine whether the failure to give such an instruction was harmful error, we must consider the charge as a whole.[16]

Here, the trial court repeatedly referred to the defendants jointly, never informed the jury that it needed to make a separate determination of guilty or not guilty for each defendant and apparently presented the jury with a single verdict form consisting of an indictment only against Overstreet.[17] The court did give an extensive charge on parties to a crime, including specific instructions that the jury would not be authorized to find a person guilty based on mere presence at the scene of a crime or mere association with other persons involved in the commission of the crime unless the evidence showed beyond a reasonable doubt that such person committed the

---

[11] Id.

[12] Id.

[13] *Owen v. State*, 266 Ga. 312, 314 (2) (467 SE2d 325) (1996).

[14] Compare *Crawford v. State*, 148 Ga. App. 523, 526 (251 SE2d 602) (1978).

[15] *Nicholson v. State*, 265 Ga. 711, 714 (3) (462 SE2d 144) (1995).

[16] Id.

[17] Compare id.; *Wilkerson v. State*, 244 Ga. App. 307 (535 SE2d 505) (2000); *Nunez v. State*, 237 Ga. App. 808, 810 (2) (516 SE2d 357) (1999).

alleged crime, participated in the alleged crime or aided and abetted in the actual perpetration of the crime. The court also made one separate reference to Larry when instructing on the lesser included offense of voluntary manslaughter.

We find that the charge as a whole did not sufficiently distinguish the defendants or make it clear to the jury that it was authorized to convict one defendant and acquit the other. "[W]hen an error in the charge of the court is shown to exist, it is presumed to be prejudicial and harmful, and this court will so hold unless it appears from the entire record that the error is harmless. [Cits.]"[18] Although we do not approve the charge given by the court, we find that it was harmless in this case. The jury demonstrated its ability to distinguish the actions of each defendant and to convict one defendant of certain charges while acquitting the other of those same charges. Larry was convicted of all six counts of the indictment; Overstreet was convicted of only one count — armed robbery. We therefore find that the jury was not misled or confused by the deficient instructions.

4. Overstreet claims that the trial court erred by admitting Larry's pretrial statements into evidence. He argues that because of his medical condition, Larry did not actually give a statement but merely responded to the investigator's leading questions, thereby implicating Overstreet.

At the *Jackson-Denno* hearing, Bunton testified that during the interview Larry seemed to be in control of his mental faculties, was responsive to the questions asked and gave coherent responses. Before the interview, Bunton had asked Larry's nurse if he had been given any medication that would affect his memory or his ability to speak with them. Bunton testified that the nurse assured him that Larry was lucid and would understand questions posed to him. After hearing the evidence and argument from counsel for all parties, the trial court found by a preponderance of the evidence that Larry's statements were freely and voluntarily given and that he had been advised of his constitutional rights.

A trial court's findings as to factual determinations and credibility relating to the admission of a statement will be upheld on appeal unless clearly erroneous.[19] Based on our review of the *Jackson-Denno* hearing transcript, we find that the trial court did not err in finding the statements admissible.[20]

5. Overstreet claims that the trial court erred by not granting his motion for mistrial following a poll of the jurors. During the poll, the twelfth juror stated that the verdict was her verdict in the jury room

---

[18] *Barton v. State*, 79 Ga. App. 380, 387-388 (2) (53 SE2d 707) (1949).

[19] *LaRue v. State*, 171 Ga. App. 371, 372 (319 SE2d 468) (1984).

[20] See id. at 372-373.

and that it was freely and voluntarily given, but that it was not still her verdict. At that point, the court instructed the jurors to return to the jury room and continue their deliberations. Larry's counsel made a motion for mistrial, which was joined by Overstreet.

In *Larry v. State*, the Supreme Court of Georgia addressed this same issue and decided it adversely to Overstreet.[21] We therefore find no error.

6. Overstreet argues that the trial court erred by denying his motion for mistrial when the twelfth juror and another juror asked to be excused from further consideration of the case after the initial verdict was rendered. After denying the jurors' request, the court gave the jury an *Allen*-type[22] charge and sent it back to deliberate.

This issue was also decided adversely to Overstreet in *Larry v. State*.[23]

7. Overstreet contends that the trial court erred by allowing the jury to change forepersons during deliberations.

In *Larry v. State*,[24] the court held that allowing the jury to change forepersons during trial does not constitute reversible error where the defendant fails to articulate any harm from the substitution. Overstreet argues that he was harmed by the change because shortly thereafter the jury came back with a verdict that he claims was forced on certain members of the jury, as shown by the initial poll of the jurors in which one juror stated that the announced verdict was not her verdict.

The jury later returned with a unanimous verdict, and a subsequent poll of the jurors confirmed that the verdict was freely and voluntarily made by each of them. "The earlier voiced reservations of the two jurors did not prevent the final verdict from being free and voluntary and unanimous."[25] Thus, we find no harm to Overstreet by allowing the substitution.

8. Overstreet claims that the trial court erred by not declaring a mistrial when the jury announced that it was hopelessly deadlocked. Instead, the court responded to a question from the jury and allowed them to deliberate further.

This issue was decided adversely to Overstreet in *Larry v. State*.[26]

9. Overstreet contends that the trial court erred by submitting the following questions to the jury: "Has the jury reached a verdict on

---

[21] 266 Ga. at 287-288 (5).

[22] *Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896).

[23] 266 Ga. at 287-288 (5).

[24] Id. at 287 (4).

[25] (Citation omitted.) Id. at 287 (5).

[26] Id. at 287-288 (5).

the defendant Marquett Larry on all counts? Is the verdict unanimous? Has the jury reached a verdict on the defendant Thomas Edward Overstreet on all counts? Is the verdict unanimous?" After allowing defense counsel to review the questions in open court, with the defendants present, the court sent the questions to the jury approximately 40 minutes after they had announced that they were hopelessly deadlocked.

After the jury has a case under consideration and indicates that it is unable to agree on a verdict, the trial court may inquire into the jury's numerical division.[27] The court here did not go even that far — it merely asked if a unanimous verdict had been reached as to each defendant. We find no error.

*Judgment affirmed. Smith, P. J., and Barnes, J., concur.*

DECIDED JULY 2, 2001.

*Ellis R. Garnett,* for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney,* for appellee.

---

[27] *Gibson v. State,* 272 Ga. 801, 802-803 (2) (537 SE2d 72) (2000).