A03A2118. MOSES v. THE STATE.
A03A2127. KNOTT v. THE STATE.
(593 SE2d 372)

SMITH, Chief Judge.

James Moses II and Shawn Knott appeal from their convictions stemming from a home invasion robbery executed by Moses, Knott, and several others. Moses and Knott were tried jointly, along with two other defendants who also participated in the home invasion.[1] Moses was found guilty of two counts of armed robbery, burglary, kidnapping, false imprisonment, and possession of a firearm during commission of a crime. Knott was found guilty of the same charges plus one count of possession of a firearm during the commission of a crime and one count of recidivism. Moses raises four enumerations of error, and Knott raises five. Because the charges arose from the same incident we have consolidated their appeals for review. We find that none of their enumerations has merit, and we affirm both convictions.

Construed to support the verdict, the evidence presented at trial, set forth more fully in *Anderson v. State*, 261 Ga. App. 456, 457-460 (1) (582 SE2d 575) (2003), showed that George Anderson, Jr., Michael Foster, Jr., James Moses II, Shawn Knott, and Kenny Mitchell decided to invade the home of the victims, a married couple, in Cherokee County, to steal approximately $150,000 from a safe located in a workshop behind the victims' house. Information regarding the safe

---

[1] All were found guilty. The convictions of co-defendants George Anderson and Michael Foster were consolidated for review and affirmed in *Anderson v. State*, 261 Ga. App. 456 (582 SE2d 575) (2003).

and the money was supplied by Chris Foster, who had worked for the victims in their business. Id. at 457 (1).

On the evening set for the robbery, the participants drove to the victims' home in two vehicles. Anderson, Michael Foster, and Mitchell drove with Knott in his gold Cadillac, and Moses drove his pickup truck. *Anderson*, supra, 261 Ga. App. at 457 (1). Anderson carried a shotgun, and he, Knott, and Foster, wearing black coats and hats that hid their faces, forced their way into the home. Mitchell and Moses remained outside, communicating with the others by walkie talkie. Id. at 457-458. Brandishing the shotgun, the robbers took $3,500 from the husband's person and then demanded to see the safe. Rejecting a small safe located in the house, they demanded to see " 'the big safe in the shop.' " Id. at 458.

When the wife, who had previously retired for the night, entered the room, she was bound with duct tape and made to lie on the floor. *Anderson*, supra, 261 Ga. App. at 458. The robbers then took the husband outside and walked toward the shop. Mitchell joined the group, while Moses remained in his truck, directing the others by walkie talkie. Id. When the robbers left the house, the wife freed her hands from duct tape and discovered that approximately $1,000 had been taken from her purse. She located her car keys and drove to her son's nearby home to get help, blaring the car's horn. She noticed Moses's truck parked on the property. Id.

When the robbers heard the horn, they panicked and fled before the husband could open the safe. In fleeing, Mitchell was pushed to the ground and left behind. Mitchell tossed away the dark sweater he had been wearing and started walking along the road, where he was picked up by a police officer concerned that he might be cold. *Anderson*, supra, 261 Ga. App. at 458. When Mitchell claimed he had car trouble, the officer drove him to a service station. Id. Mitchell telephoned Chris Foster's girlfriend, trying to locate Chris. When he eventually located him, he told him the plan had gone awry and he had been abandoned. Id. at 458-459.

When the police arrived at the home, their investigation led them to believe that the robbers must have had inside information about the business and the location of the safe. They requested and received a list of recent employees, which included Chris Foster. On the way to Foster's home, they were told that Chris Foster and Mitchell had been stopped on a local highway approximately two hours after the robbery. When they were arrested, they confessed their involvement and identified the remaining conspirators. *Anderson*, supra, 261 Ga. App. at 459.

Chris Foster's girlfriend telephoned police the next afternoon and reported that Mitchell had called her numerous times the previous night looking for Foster and that when she connected Mitchell

with Chris Foster she overheard Mitchell implicate Anderson, Knott, Moses, and Michael Foster. *Anderson*, supra, 261 Ga. App. at 459. These remaining participants were arrested shortly thereafter. Id. The shotgun was found on the side of the road, and it was traced to the victim of a previous home invasion.

Evidence of the previous home invasion was admitted against Moses and Anderson as a similar transaction, and the gun's owner identified the gun and also identified Moses and Anderson as two of the four robbers who had invaded his home. *Anderson*, supra, 261 Ga. App. at 459. The victims identified the gun and several articles of clothing taken from Anderson as those they had seen during the robbery, and the wife also identified a photograph of Moses's truck as the one she had seen parked on her property during the robbery. Id. at 479-480.

## Case No. A03A2118

1. Moses contends the trial court erred by instructing the jury on the law of conspiracy both in its main charge and in response to a jury question, because he was not charged with conspiracy. We do not agree.

Unlike the federal law cited by Moses, under Georgia law a defendant may not be charged with both conspiracy and the completed crime. Moses was charged with the completed crimes and was not charged with the crime of conspiracy. But "it is clear that a conspiracy may be proven and a jury charge may be given on conspiracy in the language of OCGA § 16-2-20, even though a defendant is not indicted under the theory of conspiracy provided in OCGA § 16-4-8." (Citations omitted.) *Wiley v. State*, 238 Ga. App. 334, 335 (4) (519 SE2d 10) (1999). OCGA § 16-2-20 permits the State to charge a defendant with a crime even though he or she did not directly commit the crime, if he or she aids or abets its commission, or advises or encourages its commission. OCGA § 16-2-20 (b) (3), (4). Viewed in the light most favorable to the jury's verdict, the evidence outlined above showed that Moses drove his truck to the victims' home and waited outside, communicating with his co-conspirators inside by walkie talkie and directing them to the safe in the victims' backyard. The jury was authorized to conclude that Moses participated in the plan to invade the home of the victims to steal "approximately $150,000 from a safe" in their home. *Anderson*, supra, 261 Ga. App. at 457 (1).

Other evidence presented at trial also connected Moses to the crime. The shotgun identified by the victims as the one used to commit the robberies and the kidnapping was identified by its owner as the one stolen by Moses and Anderson in a previous home invasion robbery. *Anderson*, supra, 261 Ga. App. at 459. In addition, Mitchell

testified for the State and identified Moses as a participant in the crimes. Id. The principal of an elementary school adjacent to the victims' property testified that during the day before the nighttime home invasion he had seen two strange vehicles, a blue truck and a "light tan larger automobile," moving suspiciously around the school parking lot. He observed a passenger in the truck leave it momentarily, confer with someone in the Cadillac, and then reenter the truck, after which the vehicles departed the parking lot. He identified Moses as the driver of the truck, photographs of Knott's car as the car he had picked out of a lineup, and photographs of Moses's pickup truck as the truck he had seen.

This evidence showed that Moses was present both before and during the home invasion, had provided the shotgun, and had collaborated with the men who went inside the victims' home. The State's theory was that Moses had conspired with the other three co-defendants and other persons to commit the crime. Here, as in *Williams v. State*, 267 Ga. 308, 309 (2) (477 SE2d 570) (1996), and in *Wiley*, supra, 238 Ga. App. at 335 (4), the trial court did not err in giving a charge on conspiracy.

Nor did the trial court err in responding to the jury's question. Moses alleges that the trial court "essentially respond[ed] in the affirmative" when the jury asked: "If found guilty of conspiracy, are they automatically guilty of all charges?" This allegation misstates and misconstrues the trial court's response, which was cautious and fair. Answering the jury's question, the trial court stated:

> We have a question from the jury, and that is, "If found guilty of conspiracy, are they automatically guilty of all charges?" Now, in a way, that's kind of a misunderstanding. You don't find them guilty of a conspiracy. You consider conspiracy as a theory of guilt. . . . The only response I can give you is that . . . if you find beyond a reasonable doubt that a Defendant was a party to a conspiracy to commit a crime, a certain crime, then he or they would only be guilty of those acts done naturally and necessarily in furtherance of the object of that conspiracy.

To clarify this for the jury, the trial court repeated the latter part of the response and asked if the jurors had any questions. The jurors responded that they did not.

This was not an affirmative answer to the jury's question, nor was it a "constructive amendment to the indictment" that added a crime not charged, as alleged by Moses. The trial court correctly stated the law.

2. Moses maintains his trial counsel provided ineffective assistance in several ways.

(a) Moses asserts that his trial counsel was ineffective in failing to question six members of the panel who said, during preliminary questioning, that they had been crime victims. In addition, one member of the panel indicated that she was married to the chief of police in a local community in the county in which Moses was being tried, and Moses asserts that trial counsel did no follow-up questioning of this juror, either. Counsel eliminated two of these jurors by using peremptory strikes, but because all peremptory strikes were exhausted, counsel was forced to accept two of these panel members as jurors.

It is well established that when a defendant in a criminal trial must exhaust peremptory strikes to eliminate a juror who should have been excused for cause, it is harmful error. The "accused is entitled to a full panel of *qualified* jurors (that is, jurors not subject to being excused for cause) to which to direct his peremptory strikes." (Citations and punctuation omitted.) *Kirkland v. State*, 274 Ga. 778, 779-780 (2) (560 SE2d 6) (2002). But we must review the question of whether trial counsel has been sufficiently thorough in questioning potential jurors under a deferential standard, because it may involve matters of trial strategy.

The transcript reveals that trial counsel did follow up the initial questioning of these jurors, albeit not individually. The jurors who indicated they had been victims of burglaries were asked whether their experiences would allow them to remain impartial, and all panel members addressed indicated that they would not have difficulty being fair.

In addition, a strategic motive is evident here. Counsel apparently decided that the experience most likely to lead to bias in this case was not a burglary, but the terror experienced by victims who were tied up at gunpoint when their homes were violently invaded. Either Moses's trial counsel or counsel for one of his co-defendants followed up with those potential jurors who indicated they had been the victims of such crimes and questioned them individually regarding possible bias. All these jurors indicated that they could be fair and impartial.

The juror who was married to a town's chief of police was also questioned extensively. She remained firm in her insistence that she could be her "own person" in deciding this case and not consider any possible pro-prosecution bias of her husband. We know of no case addressing this precise issue. This potential juror's relationship with law enforcement, however, was certainly far more tenuous than that of jurors in other cases in which our appellate courts have affirmed the trial court's refusal to disqualify for cause. In *Hutcheson v. State*,

246 Ga. 13 (268 SE2d 643) (1980), our Supreme Court set forth the rule that a full-time police officer challenged for cause in a criminal trial must be excused. But our courts have

> refused to extend the automatic disqualification rule in *Hutcheson* to those less connected with law enforcement than full-time police officers. See *Denison v. State*, 258 Ga. 690 (4) (373 SE2d 503) (1988) (no assumption of bias on the part of sworn deputies employed by the sheriff); *Wilson v. State*, 250 Ga. 630 (4) (a) (300 SE2d 640) (1983) (no assumption of bias on the part of inactive reserve and auxiliary police); *Jordan v. State*, 247 Ga. 328 (6) (276 SE2d 224) (1981) (former police officers currently working at state correctional facility not subject to challenge for cause).

*Mosher v. State*, 268 Ga. 555, 557 (2) (491 SE2d 348) (1997). This court also upheld a trial court's refusal to disqualify for cause a potential juror employed by the Georgia Bureau of Investigation as an instructor. *Woods v. State*, 224 Ga. App. 52 (479 SE2d 414) (1996). And in *Mosher*, supra, 268 Ga. at 557 (2), the Supreme Court upheld the refusal to disqualify for cause a potential juror employed by the Federal Law Enforcement Training Center as an instructor.

To establish a claim of ineffective assistance of counsel, a defendant must show both that his counsel's performance was deficient and that a reasonable probability exists that but for the deficiency the result of the trial would have been different. *Bailey v. State*, 273 Ga. 303, 307 (5) (540 SE2d 202) (2001). If an insufficient showing is made on either prong, we need not address the remaining prong. Id. Here, because this juror would not have been excused for cause, Moses has not shown that his counsel's performance was deficient in that regard.

(b) Our conclusion that trial counsel's performance was not deficient renders moot Moses's claim that his previous appellate counsel rendered ineffective assistance by failing to raise this point in his amended motion for new trial. Failure to raise a ground for new trial that would not have been granted cannot constitute ineffective assistance of counsel. See generally *Head v. Thomason*, 276 Ga. 434, 440 (7) (578 SE2d 426) (2003).

3. (a) Moses asserts that he was convicted by a jury that was not properly instructed on the quantum of circumstantial evidence required for a conviction. In *Robinson v. State*, 261 Ga. 698 (410 SE2d 116) (1991), our Supreme Court held that when the State's case depends in whole or in part on circumstantial evidence, a charge on the law of circumstantial evidence must be given upon request. Although Moses did not submit a written request to charge on this

issue, he seeks to take advantage of the fact that his co-defendant Anderson did so and that his "trial counsel was effectively told by the court that the court would be charging the jury on the law of circumstantial evidence as it is codified in OCGA § 24-4-6." He claims that the trial court's charge did not accurately reflect the principles embodied in OCGA § 24-4-6 and that the trial court's failure to charge in the language of OCGA § 24-4-6 on this issue resulted in reversible error. He also argues that even if we find that he cannot ground his claim on a request made by counsel for a co-defendant, the charge given was totally misleading and "not comprehensible to the jury." This enumeration has no merit, for several reasons.

First, orally adopting a charge requested by a co-defendant is unavailing. *Valdez-Hardin v. State*, 201 Ga. App. 126 (410 SE2d 354) (1991). Second, Moses cites extensively to cases in which this court and the Supreme Court of Georgia have decried trial courts' failure to give a charge on circumstantial evidence. But in the cited cases,[2] no charge on the quantum of circumstantial evidence necessary for a conviction was given. Here, in contrast, a charge was given conveying the principles embodied in OCGA § 24-4-6.

That Code section provides: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." The trial court charged the jury:

> You are not authorized to return a verdict of guilty based upon circumstantial evidence, unless the evidence as a whole is consistent with guilt and points so convincingly toward the conclusion of guilt that any other conclusion or theory of the case is excluded as unreasonable.

The charge given stated the principle set forth in OCGA § 24-4-6, albeit in different words. It is well established that it is not error to refuse to give a requested instruction in the exact language requested when the charge given adequately covers the principle requested. *Massey v. State*, 270 Ga. 76, 78 (4) (508 SE2d 149) (1998). An almost identical charge was upheld in *Lowe v. State*, 267 Ga. 180, 181 (3) (476 SE2d 583) (1996). Our Supreme Court held in *Lowe* that the charge given was "the functional equivalent of the rule stated in OCGA § 24-4-6. The trial court need not track the exact language of that Code section in order to satisfy the requirement that the jury be

---

[2] E.g., *Yarn v. State*, 265 Ga. 787 (462 SE2d 359) (1995); *Burks v. State*, 246 Ga. App. 22 (538 SE2d 769) (2000); *Newsome v. State*, 217 Ga. App. 379 (457 SE2d 232) (1995).

instructed on the principle of the sufficiency of circumstantial evidence to warrant a conviction. [Cit.]" Id.

Third, we cannot agree with Moses that the charge given was confusing or misleading. In fact, while the language of OCGA § 24-4-6 has been criticized as confusing, see *Grier v. State*, 217 Ga. App. 409, 411 (1) (458 SE2d 139) (1995), the charge given explained the required principle in understandable fashion.

(b) Moses also asserts that his trial counsel was ineffective for failing to submit a written request. He cannot show that the outcome of the trial would have been different had such a request been submitted, however, since we have determined that the charge given covered the same principle. See generally *Holt v. State*, 260 Ga. App. 826, 829-830 (2) (581 SE2d 257) (2003).

4. Moses claims the evidence was insufficient to support his conviction on Count 2 of the indictment, armed robbery of the wife. Armed robbery is committed when with intent to commit a theft, one takes property from the person or immediate presence of another by use of an offensive weapon. OCGA § 16-8-41 (a). Moses argues that the State presented no evidence showing that a weapon was used in taking her property. We have held that the elements of the statute are satisfied even when the weapon is concealed, but some physical manifestation of a weapon must be shown, or at least some evidence from which the presence of a weapon may be inferred. *Nelson v. State*, 233 Ga. App. 385, 386 (1) (503 SE2d 335) (1998), overruled on other grounds, *Curtis v. State*, 275 Ga. 576, 578 (1) (571 SE2d 376) (2002).

Moses states emphatically that the wife "never testified that she saw a weapon nor did she testify that she believed that the men had a weapon." This allegation is completely belied by the record. The wife testified that she saw the man with the gun and "could see the tail of the coat flapping as he swung the gun in the hall. . . . I could see the gun and the front of the tail of the coat swinging backwards and forwards." This testimony satisfies the requirement stated above, and it was sufficient to support Moses's conviction on the charge of armed robbery of the wife.

### Case No. A03A2127

5. Knott contends the trial court erred in failing to sever his trial after evidence of a similar transaction was admitted against his co-defendants but not against him. He also argues that the trial court failed to give a sufficient limiting instruction when the similar transaction evidence was introduced. We do not agree.

The similar transaction was an armed robbery by co-defendants Moses and Anderson, along with two unidentified assailants, in

which a gun was taken from the victim's residence. This gun was used in the robbery for which Knott and his co-defendants stood trial. Knott moved to sever his trial, arguing that although the similar transaction was not admitted against him, its admission substantially prejudiced him. He claims that the denial of his motion for severance was error. He reasons that two of the four perpetrators of the similar transaction were his co-defendants in the charged crimes, while two were never identified because they wore masks. Because the charged offenses also involved four individuals and the gun used in the charged offenses was stolen in the similar transaction, Knott argues that it was likely that the jury would infer that he was one of the two unknown perpetrators of the similar transaction.

The question of whether to grant a motion for severance lies within the discretion of the trial court. *Overstreet v. State*, 250 Ga. App. 336, 338 (2) (551 SE2d 748) (2001). The court must consider a number of factors in deciding whether to grant or deny such a motion, including whether the number of defendants will create confusion of the law and evidence applicable to each individual defendant, whether there is a danger that evidence admissible against one defendant will be considered against another, and whether the defenses of the defendants are antagonistic. Id. at 338-339 (2). An appellate court will not find an abuse of the trial court's discretion unless the appellant shows prejudice that amounts to a denial of due process. Id. at 339 (2).

We also note our Supreme Court has held that when an appropriate limiting instruction is given and the evidence does not directly implicate the movant, severance is not required. *Hannah v. State*, 261 Ga. 336, 337 (2) (404 SE2d 440) (1991). Here, the trial court instructed the jury twice regarding proper use of the evidence, cautioning the jury that as to "[a]ny defendant who is not so positively connected or identified to" the similar transaction, it "may not consider" any such evidence.

Knott argues that this was insufficient because he specifically requested that the trial court name him in the contemporaneous limiting instruction. The trial court declined to name Knott specifically without knowledge of "what's going to happen in the rest of the trial." But at the conclusion of the trial, when all evidence had been presented, the trial court repeated the limiting instruction, this time specifically naming Knott. The trial court also cautioned the prosecutor not to argue that Knott and Foster could be the two unknown participants in the similar transaction, and the district attorney followed the trial court's instruction. In addition, in closing argument Knott's counsel emphasized that the jury was not permitted to use the similar transaction evidence against his client.

We know of no case specifically addressing the point raised by

Knott. But given the trial court's repeated instructions, the trial court's cautionary remarks to the prosecutor, the defense closing argument, and the clarification provided for the jury in the trial court's final instruction that the evidence was not to be considered against Knott, we find that no harm or prejudice to Knott resulted. The denial of Knott's motion for severance was not error.

6. In three enumerations, Knott complains of the insufficiency of the evidence to support his conviction. As shown below, we find the evidence sufficient to support Knott's convictions under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(a) Knott first maintains his conviction should be reversed because the evidence against him consisted solely of the testimony of Mitchell, an accomplice, which was insufficiently corroborated.

Even slight evidence of corroboration is sufficient, and that evidence may be circumstantial. *Jones v. State*, 258 Ga. App. 852, 853 (576 SE2d 18) (2002). The sufficiency of such corroboration is a matter for the jury. *Finley v. State*, 252 Ga. App. 66, 67 (2) (555 SE2d 523) (2001).

As noted above, the prosecution's theory of the case was based upon a conspiracy. Evidence was admitted showing that Knott was present before and during the robbery. And

> if two or more persons enter into a conspiracy, any act done by any of them pursuant to the agreement is, in contemplation of law, the act of each of them and they are jointly responsible therefor. This means that everything said, written, or done by any of the conspirators in execution or furtherance of the common purpose is deemed to have been said, done, or written by each of them.

(Citation and punctuation omitted.) *Burke v. State*, 234 Ga. 512, 514 (216 SE2d 812) (1975). In addition, Knott's car was identified as one used in viewing the property before the robbery; clothing used in the robbery was found in Knott's apartment; and Anderson's girlfriend testified that Knott called Anderson after the crime and told him that someone had been left behind. This evidence satisfied the corroboration requirement.

*Hill v. State*, 236 Ga. 831 (225 SE2d 281) (1976), relied upon by Knott, is distinguished on its facts. In *Hill* no corroboration of any kind existed for a co-defendant's testimony that Hill was implicated in the robbery. Hill was simply in a car with two co-defendants when arrested.

(b) Knott next asserts that the evidence showed only that he was an accessory after the fact and not a party to the crime. As the State

points out, this argument amounts to nothing more than disagreement with the jury's verdict. Much evidence, including that pointed out in the preceding subdivision, showed that Knott was a party to the crime. Mitchell's testimony, as corroborated by the other evidence, clearly showed that Knott planned the crime with the other defendants, drove to the victims' home, and participated in the robbery. This enumeration has no merit.

(c) In his final enumeration, Knott maintains that the evidence was insufficient to support his conviction of possession of a firearm by a convicted felon. We do not agree.

Knott does not deny that he is a convicted felon, but he argues that Georgia law requires the State to show that he possessed the firearm "on or about his person," citing OCGA § 16-11-126 (a). That statute involves carrying a concealed weapon, and it does include the quoted language. Knott was charged, however, with violating OCGA § 16-11-131, possession of a firearm by a convicted felon, which does not employ the language relied upon by Knott. Indeed, constructive possession is sufficient to show violation of the statute. *Addison v. State*, 254 Ga. App. 347, 349 (3) (564 SE2d 204) (2002).

The trial court properly charged the jury that if they found a conspiracy, the acts of any one of the co-conspirators were the acts of all. Knott was in constructive possession of a weapon because his co-defendant and co-conspirator Anderson possessed a weapon. His conviction on the firearm charge was therefore adequately supported.

*Judgments affirmed. Ruffin, P. J., and Miller, J., concur.*

DECIDED JANUARY 16, 2004

*Thomas J. Ford III, Bernard S. Brody*, for appellant (case no. A03A2118).

*Jonathan A. Kesler*, for appellant (case no. A03A2127).

*Garry T. Moss, District Attorney, Rosemary Kittrell, Assistant District Attorney*, for appellee.