## S09A0443. MARSHALL v. THE STATE.
### (676 SE2d 201)

THOMPSON, Justice.

Defendant Carey Marshall was convicted of malice murder in connection with the shooting death of Timothy Small.[1] He appeals, asserting, inter alia, a photographic array was impermissibly suggestive and led to the misidentification of defendant as the perpetrator. Finding no error, we affirm.

1. In the midst of a game of pool at a club in DeKalb County, the victim accused defendant of manipulating the billiard balls. Heated words were exchanged, but the argument cooled down within minutes. Defendant, who remained calmer than the victim as the two of them argued, left the pool table, went to the bar for a drink, and left the club. Thereafter, defendant returned to the club and approached the victim, who was playing another game of pool. Defendant stood behind the victim, pulled a pistol from his jacket, and fired three shots, two of which struck the victim in the head and killed him.

The evidence was sufficient to enable any rational trier of fact to find defendant guilty beyond a reasonable doubt of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Several eyewitnesses placed defendant in the pool hall when the

---

[1] The victim was killed on June 7, 2006. The grand jury indicted defendant and charged him with malice murder, felony murder and aggravated assault. Trial commenced on July 16, 2007, and the jury returned its verdict on July 18, finding defendant guilty on all counts. The trial court sentenced defendant to life in prison for malice murder; the remaining counts were merged and vacated. Defendant filed a motion for new trial on August 15, 2007, which he amended on July 10, 2008. The trial court denied the motion on October 3, 2008. Defendant timely filed a notice of appeal and the case was docketed in this Court on December 4, 2008.

352

shooting took place, at approximately 3:00 a.m.; they watched as defendant and the victim played pool, witnessed defendant and the victim arguing, and picked defendant out of a photographic lineup shortly after the shooting. Although one or two witnesses were reluctant to positively identify defendant at trial as the shooter because of the passage of time, one, who had played pool with defendant one or two weeks previously, watched as defendant played several games with the victim, and stood at the pool table when defendant approached the victim and produced a pistol, positively identified defendant as the shooter. The credibility of these witnesses was a matter lying within the province of the jury, not the trial court, and not this Court. *Mickens v. State*, 277 Ga. 627 (593 SE2d 350) (2004).

2. Defendant asserts the trial court erred in failing to suppress evidence of a photographic lineup. In this regard, defendant posits that the lineup was impermissibly suggestive because defendant was the only person pictured with both a white t-shirt and gold necklace.[2] We find no error.

> Convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *McCoy v. State*, 237 Ga. 62, 63 (226 SE2d 594) (1976); *Bonner v. State*, 160 Ga. App. 902, 903 (1) (288 SE2d 612) (1982).

*Selbo v. State*, 186 Ga. App. 779, 781 (368 SE2d 548) (1988). Accord *Wilson v. State*, 275 Ga. 53, 59 (562 SE2d 164) (2002). An identification procedure will not be deemed to be impermissibly suggestive unless it "leads the witness to [the virtually] inevitable identification of the defendant as the perpetrator, [and] is the equivalent of the authorities telling the witness, 'This is our suspect.' " (Punctuation omitted.) *Padilla v. State*, 273 Ga. 553, 554 (1) (544 SE2d 147) (2001). The fact that defendant's photograph was the only one depicting a gold necklace did not make the photographic lineup unduly suggestive, "especially when there are other individuals in the lineup having roughly the same characteristics and features as the accused." *Humphrey v. State*, 281 Ga. 596, 597 (642 SE2d 23) (2007).

3. Defendant sought a continuance in the midst of trial because his counsel only then learned that the mother of defendant's son was

---

[2] Although other photographs depicted individuals who were wearing white t-shirts, defendant was the only one with a gold necklace.

able to provide defendant with an alibi. According to counsel, the witness would have testified that she was visiting defendant's house on the night of the murder; that defendant came home at approximately 2:30 in the morning; and that defendant did not appear to be upset at that time. Counsel added that the witness was out of state and he was trying to convince her to appear voluntarily, but that she was not cooperating. Given that the trial had been specially set for more than six months and that the witness might not have appeared in court in any event, it cannot be said that the trial court abused its discretion in denying defendant's motion for a continuance. See generally *Foster v. State*, 213 Ga. 601 (1) (100 SE2d 426) (1957) (applications for continuance are addressed to the sound discretion of the court).

4. Defendant claims he was afforded ineffective assistance of counsel because his trial attorney failed to file notice of an alibi defense and to obtain the presence of an alibi witness, failed to reserve objections to the trial court's jury charges, and failed to poll the jury after it returned its verdict. We disagree.

(a) Prior to trial, defendant told defense counsel that his son's mother would provide him with an alibi and that he would try to find the contact information. Defendant gave defense counsel a telephone number which defense counsel called; however, the number was no longer used by the witness and, although defense counsel took other steps to find the witness, she was unable to do so. Finally, in the midst of trial, defendant gave defense counsel another telephone number for the witness and defense counsel was able to speak with her. However, the witness was out of state and defense counsel was unable to convince her to appear voluntarily. See Division 3. Given these facts, it cannot be said that defense counsel's performance fell below an objective standard of reasonableness under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

(b) Defense counsel raised specific objections to the trial court's charge; she did not reserve objections generally. This was not, nor could it be, deficient performance because at the time of trial, a "reservation of objection" could no longer be used to preserve objections to the charge. See OCGA § 17-8-58 (Ga. L. 2007, p. 595, effective July 1, 2007).

(c) Our courts have "consistently rejected ineffective assistance claims based on the failure to conduct a poll." *Hodge v. State*, 287 Ga. App. 750, 753 (652 SE2d 634) (2007).

5. Defendant correctly points out that the trial court erred in failing to give defendant's request to charge on the law of circumstantial evidence. However, we find the error to be harmless in light of the overwhelming direct evidence of guilt. See Division 1. As the

Court of Appeals observed:

> *Mims v. State*, 264 Ga. 271, 272 (443 SE2d 845) (1994), is quite clear that where circumstantial evidence has been introduced, the trial court upon request *must* instruct the jury in the principle of OCGA § 24-4-6, which provides that "to warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." Nevertheless, *Mims* implicitly recognized that failure to give the charge would be harmless where the evidence of guilt was overwhelming. *Mims*, supra, 264 Ga. at 273. Thus, since *Mims* [it has been] repeatedly held that where direct evidence of guilt was overwhelming, the trial court's failure to give the charge was not reversible error. See, e.g., *Burks v. State*, 246 Ga. App. 22, 25-26 (2) (538 SE2d 769) (2000); *Cornish v. State*, 219 Ga. App. 884, 885 (1) (466 SE2d 919) (1996); *Newsome v. State*, 217 Ga. App. 379, 381 (457 SE2d 232) (1995); *Ellerbee v. State*, 215 Ga. App. 102, 104 (4) (449 SE2d 874) (1994).

*Bradwell v. State*, 262 Ga. App. 651 (1) (586 SE2d 355) (2003).

6. Defendant asserts the trial court erred in granting the State's motion in limine to foreclose evidence of the victim's tattoos.[3] However, defendant failed to establish a link between the tattoos and the victim's murder. See generally *Hinton v. State*, 280 Ga. 811, 816-817 (5) (631 SE2d 365) (2006). Thus, it cannot be said the trial court abused its discretion in ruling this evidence inadmissible.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 28, 2009.

*Charles L. Webb*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Barbara B. Conroy, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Christopher R. Johnson, Assistant Attorney General*, for appellee.

---

[3] The victim had three tattoos, one on each forearm and one on his stomach. On one forearm, the word "Outlaw" appeared; a cross encircled by a serpent was depicted on the other forearm. The words "Thug Life" were tattooed on the victim's stomach.