## 42608. JOHNSON v. THE STATE.
(341 SE2d 220)

BELL, Justice.

Appellant James Lawrence Johnson and co-defendant Reginald Ross were jointly indicted for the murder of Rosetta Threet and the aggravated assault of her husband, James Willard Threet. Their cases

were severed for trial.[1] Ross was convicted and sentenced for both crimes, and his conviction was affirmed in *Ross v. State*, 255 Ga. 1 (334 SE2d 300) (1985). Johnson was convicted of the murder and sentenced to life imprisonment therefor, and was acquitted of the aggravated assault. He appeals, raising four enumerations of error, and we affirm.

The statement of the facts in *Ross v. State* are substantially in accord with the facts developed during this appellant's trial. However, as there were some differences in the testimony[2] adduced at the two trials, it is necessary to briefly summarize herein the evidence presented at Johnson's trial.

In late March 1984 the victims were attempting to sell a quantity of jewelry with the assistance of Reginald Ross. On the afternoon of March 28, 1984, Ross met the victims at their apartment, accompanied by Deborah Simpson, who was a mutual friend, and the appellant. Ross and Rosetta Threet argued about the jewelry and Ross threw it on the floor, claiming that it was worthless. A fracas ensued. According to James Threet, at one point during the incident the appellant was sitting in a chair with a shotgun on his lap. Threet said appellant subsequently grabbed a pistol, pointed it at Rosetta Threet's head, and told her, "You know, don't talk like that. Don't you know I will blow your damn brains out." According to Deborah Simpson, Johnson put the pistol to Rosetta Threet's forehead and told her "b____, do you believe I will blow your brains out," to which Rosetta Threet replied "yes." Johnson testified that the pistol had fallen to the floor during a struggle between Rosetta Threet and Ross. He admitted that he picked it up and "put the pistol in her face and told her, . . . you know you can get blown away like that . . . I don't know what the problem is but I need to straighten it out now."

Ross subsequently sent Simpson outside, and then took James Threet to a hallway, leaving appellant alone with Rosetta Threet. Ross told James Threet to say his prayers and get on his knees, then shot him five times and returned to the apartment. James Threet, although grievously wounded, survived. Rosetta Threet then was forced to kneel and was killed by three gunshots to the head. Accord-

---

[1] The crimes were committed on March 28, 1984. Appellant and Ross were indicted on May 1, 1984. The co-defendants' motions for severance of trial were granted on August 29, 1984. Johnson's jury returned its verdict on January 10, 1985, and Johnson was sentenced the following day. He filed a motion for new trial on February 11, 1985, which was amended on May 17, 1985. The motion for new trial was denied on May 29, 1985. Notice of appeal was filed June 18, 1985. The record was docketed in this court on August 13, 1985, and on September 27, 1985, the appeal was submitted for decision on briefs without oral arguments.

[2] For example, Ross and Johnson each testified at his own trial, but not at each other's trial, although a statement by Ross was read into evidence at Johnson's trial. See fn. 3, infra.

ing to Ross,[3] it was Johnson who shot Rosetta Threet. Johnson testified that he did not shoot her.

Deborah Simpson said that as she was sitting in the car, Ross came out to it and looked for the keys. He told her to get his keys, and she walked back to the porch of the apartment. She said that Johnson, who was standing on the porch, told her he was not going to let her go in. She asked whether the Threets were dead, and he said "yes, they are through." Simpson testified that after Ross, Johnson and she drove away from the victims' apartment Johnson said to Ross, "Damn man, . . . you emptied your pistol into that m_____ f_____ didn't you." Simpson said that Johnson also held up a gold chain and asked Ross how much he was going to get for it. According to Simpson, Johnson also said that he should have had sex with Rosetta (his actual words were considerably more graphic). Simpson further added that Johnson told her to keep her mouth closed because the same thing could happen to her, and that he told Ross to wash the powder burns off his hands.

During his own testimony Johnson denied holding up the chain and asking Ross how much he was going to get for it. He admitted that during the car trip in question he told Ross that he would "never get that blood and powder burns off of [Ross'] hands." He also admitted telling Simpson that "Deborah, you know what happened over to the house . . . you know the same thing can happen to you . . . whatever you do, don't say anything."

The three drove to another residence, where Johnson changed his pants. Appellant testified that he changed his pants because he had spilled mineral spirits in his lap during the drive. He denied having used the mineral spirits to clean Rosetta Threet's blood off his pants. Johnson left the state shortly after the killings, and surrendered to police in Wilmington, North Carolina, in May 1984.

1. The trial court's charge concerning conspiracy fairly covered the principles expressed in Johnson's requested charge on that subject, and hence the court did not err by refusing to give the requested charge. *Welch v. State*, 251 Ga. 197 (3) (304 SE2d 391) (1983).

2. The court adequately charged the jury on the law of parties to a crime.

3. Appellant contends that certain pre-trial statements which victim James Threet gave to police varied from his trial testimony. In particular, appellant contends that although Threet testified that Johnson had said, "I came over to kill," Threet omitted this statement from his pre-trial statements. Johnson argues that this

---

[3] On May 29, 1984, Ross made a statement to police investigators. The written statement, State's Exhibit No. 22, was excluded from evidence, but the text of the statement was read into evidence without objection.

amounted to a material variance between Threet's pre-trial statements and his trial testimony, and that the failure to provide him with copies of the pre-trial statements therefore constituted a denial of his right to confront Threet during cross-examination.

Although the transcript reflects that the trial court agreed to seal the pre-trial statements for appellate review, they are not part of the appellate record. Moreover, even if those statements were before us, appellant's enumeration would be nonmeritorious, as the transcript page which appellant cites does not contain the alleged testimony by Threet, and our review of the record for the purpose of assessing the sufficiency of the evidence, see Division 5, infra, has not revealed the existence of the alleged testimony elsewhere in the transcript. Cf. *Petkas v. Grizzard*, 253 Ga. 407, 408 (321 SE2d 323) (1984); *Justice v. Dunbar*, 244 Ga. 415 (260 SE2d 327) (1979). We therefore find no error.

4. In his final enumeration of error appellant contends that the court unduly restricted his right to confront witness James Threet. His argument is based on the contents of two documents: an application for bond by Threet in an unrelated case in which he was accused of armed robbery, and a report by a police officer who investigated the instant case.

a. Johnson argues that part of Threet's application for bond constituted a prior inconsistent statement which he should have been allowed to use to impeach the witness. The application for bond, dated and filed in the superior court on May 11, 1984, recites that James Threet "has been charged with the offense of armed robbery, but as of this date, he is unindicted. The Defendant was arrested based upon a warrant issued April 6, 1984, and which was executed the same date. The Defendant and his wife, who is now deceased, were the victims of *a robbery* on March 28, 1984. As a result of *the robbery* and shooting, the defendant's wife was killed and the Defendant, himself, suffered five (5) gunshot wounds. . . ." (Emphasis supplied.)

During his cross-examination of James Threet, Johnson's counsel asked whether Threet had told anybody that he had been shot during an armed robbery. Threet replied that, "I don't remember discussing anything of that nature with anybody, sir." Johnson's counsel then attempted to show him a document which defense counsel referred to as "Defendant's Exhibit Number 1" (which was, presumably, the application for bond). The state's counsel objected to the defense counsel making any reference to the document, and the court ruled that it would not permit the defense "to go into that."

Subsequently, defense counsel argued to the trial court that he should have been allowed to use the application for bond for impeachment because "it is obvious [Threet] told his lawyer that he was involved in a robbery and in fact his lawyer told the judge that Mr.

Threet was the victim of a robbery was the reason he was shot."

We find no error. OCGA § 24-9-83 provides that a "witness may be impeached by contradictory statements previously made *by him* as to matters relevant to his testimony and to the case." (Emphasis supplied.) Here, although counsel for Threet filed the application for bond on Threet's behalf, there is no evidence that Threet told him he had been shot during a robbery, or that Threet approved the wording of the document. For all that appears, the language may have been the attorney's own characterization of the incident at Threet's residence. See generally 98 CJS 581, Witnesses, § 595 (1957 ed. & 1985 pocket part). We do not find, on the record before us, that the statement of Threet's attorney may be ascribed to him, and therefore conclude that the application was not admissible under OCGA § 24-9-83.

Furthermore, "where a witness merely states that he does not remember, he cannot be impeached by the showing of former statements with respect to the facts which he claims not to remember. . . ." 98 CJS 559, Witnesses, § 583.

b. The police report, styled as a "supplementary offense report" and dated March 28, 1984, is signed by the reporting officer, a Detective J. W. Peal. (Peal did not testify at trial.) In his report Peal stated that he had searched James Threet's clothing at the hospital where Threet was being treated, and had found in Threet's wallet "a paper which indicated that the victim was due in Clayton County State Court on 3-28-84 at 9:00 a.m." He also wrote that he had briefly spoken with Threet, who had initially "stated he didn't know why the shooting happened, but when pressed to give a reason, he stated that it was drug related."

On appeal, Johnson alleges that he did not have the Peal report at trial. Pointing to the portions of the report which indicated that Threet said the shooting was drug related and which indicated that Threet was scheduled to appear in Clayton State Court, and citing *Hines v. State*, 249 Ga. 257 (2) (290 SE2d 911) (1982), Johnson argues that he could have used those portions of the report to impeach Threet, and that the state therefore denied his right to confrontation by failing to supply him with a copy of the report. We find no error.

As to the Peal report's recitation that Threet said the shooting was "drug related," we find that appellant has failed to show how denial of access to that portion of the report prejudiced him. Mr. Threet testified that Ross told him he was upset with Rosetta Threet because Mrs. Threet owed him $100 for cocaine. In light of this testimony, the recitation in the Peal report would not have been impeaching.

We also conclude that there was no abridgement of appellant's Sixth Amendment right with respect to the portion of the document which indicated that Threet "was due in Clayton County State Court

on 3-2-84 at 9:00 a.m." To begin, we cannot agree with appellant that this passage indicated that Threet faced *pending criminal charges* in Clayton County; the "paper" in question may have been nothing more than a subpoena to appear as a witness, or may have had to do with a civil case. Thus, appellant has failed to show he was prejudiced by the withholding of this portion of the Peal report.

Moreover, assuming that the Peal report's allusion to a "paper" constituted an oblique reference to pending criminal charges against Threet in the Clayton County State Court, we nevertheless find no error. The appellant's reliance on *Hines v. State*, supra, 249 Ga., is misplaced, for *Hines* is inapposite to the instant case. In *Hines* we held that the trial court, in limiting the defense's cross-examination of a state's witness, impermissibly denied the defendant's right to cross-examine a key state's witness concerning pending criminal charges against him. Id. at 258-260. Here, in contrast to *Hines*, the state itself brought out during direct examination of Threet the fact that Threet faced two pending felony changes which were unrelated to the instant case. Moreover, the defendant's opportunity to cross-examine Mr. Threet was not abridged.

5. We find that the evidence was sufficient to convince any rational trier of fact of the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 13, 1986 —
RECONSIDERATION DENIED APRIL 1, 1986.

*John Thomas Chason,* for appellant.
*Lewis R. Slaton, District Attorney, Michael J. Bowers, Attorney General, Dennis R. Dunn, Staff Assistant Attorney General,* for appellee.