### A03A0826. HOLT v. THE STATE.
(581 SE2d 257)

BLACKBURN, Presiding Judge.

Following his conviction by a jury of armed robbery, August Lee Holt appeals, arguing that (1) the trial court erred by failing to charge the jury on impeachment by prior conviction, and (2) he did not receive effective assistance of counsel. For the reasons set forth below, we affirm.

Viewed in the light most favorable to the jury's verdict, the record shows that on April 11, 2000, at about 2:30 a.m., a masked man approached a Huddle House employee in the parking lot of the restaurant, put a gun to her head, and told her to go back into the restaurant and give him the money in the cash register. Before leaving with the money, the robber fired his gun; the bullet entered a seat a few inches above the head of one of the employees, who had been told to lie on the floor. The employees described the robber as short and slim, wearing black pants, and, according to one of them, carrying a big, black gun. A 10 mm shell casing was recovered by the police at the scene.

As the robber left the restaurant, a car pulled into the parking lot. The robber pointed his gun at the passenger side of the car and told its occupants to drive off. Both occupants of the car testified that the masked man had a small build. One said that he was wearing black pants and a blue plaid flannel shirt; the other stated that the man had a black handgun that was "bigger than a nine millimeter."

In February 2001, Detective Carl Fletcher, who was investigating an unrelated robbery of a Texaco convenience store, was contacted by August Holt. Holt told him that one of the men who had robbed the Texaco was a man named Ricardo Ware. Ware was picked up on an unrelated charge and, after being advised of his rights, gave a statement in which he confessed that he had robbed the Texaco. When Fletcher told Ware that he had learned of his participation in the robbery from Holt, Ware told Fletcher that Holt had told him that

he had robbed the Huddle House while a woman named Latonya White had waited in a car, and that he had fired his handgun, a Glock 10 mm, inside the restaurant.

Detective Fletcher located White, who accompanied him to the police station and gave a statement. In that statement, White said that Holt had picked her up around 1:30 a.m. on April 11, 2000. After the two snorted cocaine, Holt parked the car, got out, and told White he would be back. While waiting for Holt to return, White heard a gunshot. Shortly thereafter, Holt came running back, breathing hard. Holt told White they had to go. White testified that when Holt "backed up and got on the road, he said, 'You didn't hear that, you didn't hear me shoot,' and I said, 'Where,' and he said, 'The Huddle House.' I asked him what he did and he said, 'Robbed the Huddle House.'"

White also stated that she and Holt had driven to his aunt's house, where he spoke with his brother, Charles, and stuck a wad of money into a drawer. White stated that Holt was wearing a black hood, wrapped around his head, black pants, and a plaid shirt with stripes.

In March, Detective Fletcher spoke with Charles Holt and he, too, gave a statement after being advised of his rights. Charles Holt testified that, on the night of April 11, 2000, he had been awakened at 3:00 a.m. by his brother, August, who told him that he "just did a lick." Charles Holt said that he saw his brother counting money and that he had a gun. Charles Holt also testified that White was with August Holt and that she told him that August "had done a lick."

1. In his first enumeration of error, Holt argues that the trial court erred in failing to charge the jury on impeachment of a witness by a prior conviction of a crime of moral turpitude. "The trial court's decision on a motion for a new trial will be upheld on appeal unless it was an abuse of discretion." *Lisle v. Willis*.[1]

At trial, Ware testified for the State. On direct examination by the State, Ware admitted that he had been found guilty of robbing a Texaco convenience store.

After reviewing the parties' requests to charge, the trial court asked Moskaly, the prosecuting attorney, and Lawson, Holt's counsel, if they wanted to request any other charges. At this point, the following exchange occurred:

Court: Okay. So what we really need is a charge on impeachment of witnesses. I think that's appropriate. That's a good

---

[1] *Lisle v. Willis*, 265 Ga. 861, 864 (3) (463 SE2d 108) (1995).

idea. That's the reason I'm doing this. Anything else you can think of?

Moskaly: I would just assume — I know we stipulated this, but I assume they don't want to tender into evidence a certified copy of Mr. Ware's conviction. So we're not going to go into the moral turpitude impeachment charge.

Court: It's already been acknowledged in his testimony that he was convicted.

Lawson: It's impossible to get a certified copy.[2]

Moskaly: Right, and I agree that we can get that and do that. Short of Mr. Lawson tendering it into evidence, I don't think he would be entitled to the specific impeachment charge of a crime of moral turpitude.

Court: You're talking about the charge dealing with being impeached by virtue of having a prior conviction?

Moskaly: Right.

Lawson: It's just that's in my theory. I'm not really hung up on that.

Court: All right. Well, we won't go into — We'll use the impeachment charge without the prior conviction. We'll only focus on prior inconsistent statements. Mr. Lawson, is there anything you can think of additionally?

Lawson: No, sir. We're satisfied with that.

As the above colloquy shows, Holt's attorney did not submit a written request for a charge on impeachment by prior conviction and acquiesced in the trial court's determination that his client was not entitled to such a charge. Where a defendant does not submit a written request to charge on impeachment by conviction, the trial court does not err in failing to charge on the issue. *Harwell v. State.*[3]

We point out, however, that the trial court was incorrect in concluding that Holt was not entitled to a charge on impeachment by prior conviction because he could not tender a certified copy of Ware's conviction. Our Supreme Court has held that testimony regarding prior convictions is sufficient to justify the giving of a charge on impeachment by conviction; thus, because the testimony regarding the conviction was properly in evidence, the trial court would have erred in refusing a written request for the instruction. *Carter v. State.*[4] But, even assuming Holt had requested the charge, "[s]ince the evidence of [Holt's] guilt is overwhelming even when [Ware's] tes-

---

[2] Ware was found guilty of robbing the Texaco on the same day he testified for the State against Holt.

[3] *Harwell v. State*, 270 Ga. 765, 770 (512 SE2d 892) (1999).

[4] *Carter v. State*, 272 Ga. 31, 32 (526 SE2d 855) (2000).

timony is discounted, it is highly probable that the erroneous failure to charge on impeachment by proof of a prior conviction for a crime of moral turpitude did not contribute to the jury verdict. It was harmless and [would] not require a new trial." (Punctuation omitted.) *McIntyre v. State*.[5]

2. In his second enumeration of error, Holt contends that defense counsel rendered ineffective assistance of counsel because he failed, as we have seen, to request a jury charge on impeachment by prior conviction. "The standard of review of the trial court's determination of the effectiveness of counsel is whether the trial court's findings are clearly erroneous." *Johnson v. State*.[6]

As the State points out, there was no evidentiary hearing held on the alleged ineffectiveness of trial counsel. It is true that "[i]n appropriate cases, claims for ineffective assistance of counsel are remanded to the trial court for an evidentiary hearing." *Norman v. State*.[7] However, "[i]n cases where such remand 'would serve no useful purpose,' the ineffectiveness issue may be decided on the record by this court." (Citation omitted.) Id. This is such a case.

> Pursuant to the two-prong test enunciated in *Strickland v. Washington*,[8] defendant must meet two tests in order to prevail on his ineffective assistance of counsel claim: 1) he must show that trial counsel's performance was deficient in that he made errors so serious that he was not functioning as the "counsel" guaranteed defendant by the Sixth Amendment; 2) defendant must show that the defense was prejudiced by the deficient performance so that defendant was deprived of a fair trial, one whose results were reliable. As to the first prong, the Supreme Court has approved the "reasonably effective assistance" standard. . . . Regarding the second prong of the test, the defendant must show that the deficient performance actually prejudiced the defense. In other words he must show there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's unprofessional errors.

(Citations and punctuation omitted.) *Concepcion v. State*.[9]

Pretermitting the question of whether Holt's trial counsel was deficient, it is clear that Holt cannot show that there is a reasonable

---

[5] *McIntyre v. State*, 266 Ga. 7, 10-11 (4) (463 SE2d 476) (1995).
[6] *Johnson v. State*, 255 Ga. App. 721, 724 (4) (566 SE2d 440) (2002).
[7] *Norman v. State*, 208 Ga. App. 830, 831 (3) (432 SE2d 216) (1993).
[8] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).
[9] *Concepcion v. State*, 205 Ga. App. 138-139 (421 SE2d 554) (1992).

probability that the outcome of his trial would have been different if counsel had requested a jury charge on impeachment by prior conviction. As explained above, the evidence of Holt's guilt is overwhelming even when Ware's testimony is discounted. Accordingly, since Holt cannot satisfy the second prong of *Strickland*, we must conclude that the trial court's determination that Holt's counsel was effective was not clearly erroneous.

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

DECIDED APRIL 10, 2003.

*Sell & Melton, Jon-Selby R. Hawk*, for appellant.
*Howard Z. Simms, District Attorney, Nancy S. Moskaly, Eugene Felton, Jr., Assistant District Attorneys*, for appellee.