S07A0051. WARNER v. THE STATE.
(642 SE2d 821)

HINES, Justice.

Frank Warner III was convicted of felony murder while in the commission of aggravated assault and possession of a firearm during the commission of a felony in connection with the fatal shooting of Randy Hamilton. He appeals his convictions and the denial of his motion for new trial, challenging the exception of a prosecuting witness from sequestration, the admission into evidence of certain

---

recorded out-of-court statements, and the jury charge on impeachment. For the reasons that follow, the challenges are without merit, and we affirm.[1]

The evidence construed in favor of the verdicts showed that on October 26, 2003, Warner, Brandon Jones, and Rodney Odom were at Warner's home discussing a plan to rob Randy Hamilton. Warner said he would set up the robbery and commented that those who helped in the robbery would get money from it. Odom brought a rifle back to the house, and Warner was "playing" with it. Warner telephoned Hamilton and told him he wanted to buy marijuana from him. That same day, Hamilton and a friend drove to Warner's house; Warner got into the back seat of the car and told them where to park. After Hamilton handed Warner some marijuana, Odom and Jones approached the car with white t-shirts wrapped around their heads. Odom tapped on the window with the rifle and shot Hamilton. Hamilton attempted to drive away, but began to choke on his own blood. Hamilton's friend put the car in park and called 911. Warner remained in the back seat as Hamilton was taken to the hospital. Odom and Jones fled the scene.

The murder weapon, a .22 caliber rifle, was found behind Warner's house. In statements to police, Warner related that he had telephoned Hamilton in order to buy some marijuana, that Hamilton came to his house, and that he knew that Hamilton was going to be robbed.

Both Odom and Jones testified at Warner's trial, admitting their roles in the fatal shooting. Jones testified that Warner had threatened him that if he testified, Warner was going to get someone to kill him.

1. The evidence was sufficient to enable a rational trier of fact to find Warner guilty beyond a reasonable doubt of the crimes for which he was tried and convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

---

[1] The crimes occurred on October 26, 2003. On June 23, 2004, a Chatham County grand jury indicted Warner along with two co-defendants, Rodney Lavar Odom a/k/a "Hot-Rod" and Brandon Jarrell Jones, for crimes stemming from the fatal shooting. Warner was charged with malice murder, felony murder while in the commission of aggravated assault, aggravated assault by use of a deadly weapon, aggravated assault with the intent to rob, and possession of a firearm during the commission of a felony. He was tried before a jury August 8-12, 2005; he was acquitted of malice murder, but found guilty of the remaining charges. On August 18, 2005, Warner was sentenced to life in prison for felony murder and a consecutive five years in prison for the firearm possession; the aggravated assaults were merged with the felony murder for the purpose of sentencing. A motion for new trial was filed on August 25, 2005, amended on April 4, 2006, and denied on June 20, 2006. A notice of appeal was filed on July 19, 2006, and the case was docketed in this Court on September 7, 2006. The appeal was submitted for decision on October 30, 2006.

2. Warner contends that the trial court abused its discretion in excepting the lead detective from the rule of sequestration, thereby violating his constitutional rights to due process and a fair trial. However, in the circumstance, as in this case, in which the State maintains that it needs the presence of the primary investigator for the orderly presentation of the case, the exception of the investigator from the rule of sequestration is within the discretion of the trial court. *Williams v. State*, 277 Ga. 853, 856-857 (4) (596 SE2d 597) (2004). Even so, Warner cites *Carter v. State*, 271 Ga. App. 588, 590 (610 SE2d 181) (2005), and argues that such discretion was abused in that the State failed to make a "true showing" of the need for the detective's presence. But, the argument is without merit.

In *Carter*, the Court of Appeals questioned "the trial court's ready acceptance of the State's conclusory assertion" that the law enforcement officer at issue was needed in the courtroom, but ultimately it applied the principle that when the prosecutor indicates that a witness is needed in the courtroom for the orderly presentation of evidence, there is no abuse of the trial court's discretion in permitting the witness to remain. Id. at 590 (2). Even assuming arguendo that the dicta in *Carter* requiring further explanation of the need for the witness to remain in the courtroom was the appropriate standard, the trial court specifically asked the State for more information about why the detective's presence was needed, and the prosecutor explained that there were many witnesses and "hours and hours" of taped interviews, and that the detective was the one most familiar with such evidence and with the complexities of this particular case.

3. Warner next contends that the trial court erred by allowing the State to introduce into evidence the recorded out-of-court statements of Lewis, Roberts, and Simmons, men who were at Warner's house either at the time the planned robbery was discussed or at the time of the fatal shooting, and of co-indictee Odom. All four men testified and were subject to cross-examination by Warner. After reviewing the recorded statements in camera, the trial court permitted them to be played, in part or in their entirety, during the testimony of the lead detective.[2]

Warner complains that the recorded interviews of Lewis and Roberts were improperly admitted as the State failed to lay the

---

[2] The trial court cited OCGA § 24-9-81 which provides:
    Any party, including the party calling the witness, may attack the credibility of a witness. In the trial of all civil cases, either plaintiff or defendant shall be permitted to make the opposite party, or anyone for whose immediate benefit the action is prosecuted or defended, or any agent of said party, or agent of any person for whose immediate benefit such action is prosecuted or defended, or officer or agent of a corporation when a corporation is such party or for whose benefit such action is prosecuted or defended a witness, with the privilege of subjecting such witness to

proper foundation for the introduction of the statements, i.e., the State failed to establish the time, place, person, and circumstances of any prior interview of the witness by the lead detective or any other law enforcement officer. However, Warner fails to show that he objected below to the lack of foundation with the specificity required for such an objection, i.e., an objection of lack of foundation must specify the foundational element that is contended to be lacking. *Tolver v. State*, 269 Ga. 530, 532 (2) (500 SE2d 563) (1998). Therefore, the issue is not preserved for appeal. Id.

As to the statements of Simmons and Odom, Warner asserts that they were improperly admitted because these witnesses were already impeached in that each man admitted his prior inconsistent statement, and thus, the taped statements served merely to bolster their testimony. He further complains about the greater length of the taped statements as opposed to the in-court testimony. However, these complaints are likewise unavailing. There is no prohibition about the prior inconsistent statement being lengthier than the in-court testimony. Also, the fact that the witness admits that he or she made the inconsistent pre-trial statement does not render it inadmissible. *Duckworth v. State*, 268 Ga. 566, 569 (1) (492 SE2d 201) (1997). Certainly, the State may attempt to impeach its own witness. OCGA § 24-9-81; *Cummings v. State*, 280 Ga. 831, 832 (2) (632 SE2d 152) (2006). And whether a witness has successfully been impeached is for the jury to decide. *Richard v. State*, 281 Ga. 401, 405 (1), n. 4 (637 SE2d 406) (2006); *Chapman v. State*, 263 Ga. 393, 394-395 (3) (435 SE2d 202) (1993).

4. Finally, Warner does not prevail in his contention that the trial court erred by not including a provision on impeachment by conviction of a crime of moral turpitude in its instruction to the jury on impeachment,[3] when two witnesses, Odom and Jones, admitted to being convicted of such crimes, thereby denying him his constitutional rights to due process and trial by jury.

Warner fails to point to anything of record informing the jury that either Odom or Jones was a convicted felon for a crime of moral turpitude.[4] Even if there had been evidence of such convictions before

a thorough and sifting examination and with the further privilege of impeachment, as if the witness had testified in his or her own behalf and were being cross-examined.

[3] See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.31.40 (3rd ed. 2003, updated 2005). As to subsection (c), which deals with impeachment by proof that the witness has been convicted of a crime of moral turpitude, commentary to the pattern instructions suggests that the term "felony" be used in lieu of "moral turpitude" when giving the charge.

[4] As to Odom, Warner cites Odom's testimony that he planned the robbery of Hamilton, participated in it, and, in fact, was the shooter. However, he concedes that "nothing about [Rodney Odom's] plea to felony murder was mentioned in the presence of the jury." Regarding

the jury, the failure to charge on impeachment by conviction would be harmless because Odom and Jones were not the only witnesses that testified that Warner was part of the robbery plan turned deadly. *Carter v. State*, 272 Ga. 31, 32 (2) (526 SE2d 855) (2000).

*Judgments affirmed. All the Justices concur.*

DECIDED MARCH 26, 2007.

*Jackson & Schiavone, Steven L. Sparger*, for appellant.

*Spencer Lawton, Jr., District Attorney, Jennifer L. Parker, Assistant District Attorney, Thurbert E. Baker, Attorney General, Robin J. Leigh, Assistant Attorney General*, for appellee.

---

Jones, Warner points to Jones's testimony that he entered a plea regarding the incident on trial and about some terms of his reduced punishment, but he acknowledges that "the exact charge(s) to which Jones had pled were not mentioned in the jury's presence."