## A07A1063. MORGAN v. THE STATE.
(651 SE2d 833)

MILLER, Judge.

Following a jury trial, Marion Morgan was convicted of two counts of armed robbery and one count of possession of a firearm during the commission of a crime. Morgan appeals, claiming that the trial court erred by (i) excepting the lead detective from the rule of sequestration; (ii) failing to charge the jury that, in determining the weight and credibility of the lead detective's testimony, it may consider that he heard the testimony of other witnesses prior to testifying; (iii) admitting evidence of two independent crimes as similar transactions; (iv) admitting Morgan's custodial statements into evidence; and (v) allowing the lead detective to testify as to inconsistent statements made by Morgan's accomplice. Morgan also claims that his trial counsel was ineffective in failing to request a charge related to how the jury could consider the testimony of the nonsequestered witness, and he alleges that there was insufficient evidence to sustain his convictions. For the reasons that follow, Morgan's claims are without merit, and we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). So viewed, the record shows that on the

afternoon of December 9, 2003, two teenage brothers were walking near their home in Savannah when a man jumped out of a dark-colored Mitsubishi Montero Sport SUV brandishing a revolver. The man demanded that both youths give him their jackets. Another man then jumped out of the Montero and demanded that the younger boy give them his pants. The two men then grabbed the older youth's jersey, ran back into their SUV, and left the scene.

A few days later, both youths reviewed a photographic lineup, and the older youth identified Morgan as the man who had brandished the revolver at him and his brother. In addition, after an abandoned blue Mitsubishi Montero Sport was discovered near Morgan's residence in Savannah's Hitch Village, a forensic officer and latent fingerprint examiner identified Morgan's fingerprints inside the vehicle.

On January 12, 2004, after an arrest warrant for Morgan was issued and his picture was published in the newspaper, Morgan's mother brought him to police headquarters. Morgan was advised of his *Miranda* rights (see *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966)), and he signed a waiver indicating his willingness to provide a statement. Morgan initially denied ever being in a Mitsubishi Montero. After the officers told Morgan that his fingerprints had been identified in the abandoned Montero, however, he claimed that he had recently leaned into a Montero being driven by an acquaintance.

On January 21, 2004, detectives investigating a similar robbery sought to question Morgan at the Chatham County jail. In that robbery, which took place on January 2, 2004, a man driving a black Volvo was stopped at an intersection when a man with a gun entered his car and demanded that he drive to Hitch Village. After the gunman ordered the man out of the car, he took the man's clothes and drove off, leaving the man in his underclothes. Morgan's fingerprints, as well as the fingerprints of his friend Dominic Jermaine Brown, were found in the Volvo after it was recovered.

Prior to providing a statement regarding that robbery, Morgan was advised of his *Miranda* rights, and he again signed a waiver indicating his willingness to provide a statement. Morgan told the detective that someone had pulled up to him "acting strange," and that he leaned over and put his hands in the Volvo to talk to the man. Immediately thereafter, Morgan claimed that he saw the same man being robbed. Morgan apparently was never charged for the robbery of the man in the Volvo, but evidence of that crime was introduced at trial as a similar transaction.

In addition, evidence of a second separate offense was admitted at trial. On the afternoon of December 11, 2003, a student at Savannah State College was walking with a friend near his home when a

dark-colored SUV stopped in front of them. Two men carrying guns emerged from the SUV, demanded that the students give them their pants, hit them on the head with their weapons, and drove away. One of the students viewed a photographic lineup and identified Dominic Brown as one of the gunmen.

1. Morgan contends that the trial court abused its discretion in excepting the lead detective from the rule of sequestration, thereby violating his constitutional rights to a fair trial. However, where the State maintains that it needs the presence of the primary investigator for the orderly presentation of the case, as it does here, Georgia courts have long recognized an exception to the rule of sequestration and have held that it is within the discretion of the trial court to allow the primary investigator to remain in court to assist the prosecution. See, e.g., *Spurlin v. State*, 222 Ga. 179, 180 (2) (149 SE2d 315) (1966); *Williams v. State*, 277 Ga. 853, 856-857 (4) (596 SE2d 597) (2004).

Morgan cites *Carter v. State*, 271 Ga. App. 588, 590 (610 SE2d 181) (2005), and argues that it "is a per se abuse of discretion for a trial judge to allow a prosecution witness to remain in the courtroom during the trial proceedings." The Supreme Court of Georgia recently held, however, that

> [e]ven assuming arguendo that the dicta in *Carter* requiring further explanation of the need for the witness to remain in the courtroom was the appropriate standard, the trial court specifically asked the State for more information about why the detective's presence was needed, and the prosecutor explained that there were many witnesses and "hours and hours" of taped interviews, and that the detective was the one most familiar with such evidence and with the complexities of this particular case.

*Warner v. State*, 281 Ga. 763, 765 (2) (642 SE2d 821) (2007).

Here, a similar showing was made regarding the prosecutor's need to have the lead detective present. As a result, the trial court did not abuse its discretion in excepting the lead detective from the rule of sequestration.

2. Morgan claims that his trial counsel was ineffective in failing to request a jury charge instructing the jury that, in determining the weight and credibility of the lead detective's testimony, it could consider that, prior to testifying, he heard the testimony of other witnesses. We disagree.

To show ineffective assistance of counsel, Morgan was required to show that his counsel's performance was deficient and that there is a reasonable likelihood that, but for counsel's errors, the outcome of his trial would have been different. *Strickland v. Washington*, 466

U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Williams v. State*, 273 Ga. App. 321, 322 (615 SE2d 160) (2005). The trial court's determination with respect to counsel's effectiveness will be upheld on appeal unless clearly erroneous. *Jackson v. State*, 209 Ga. App. 53, 56 (7) (432 SE2d 649) (1993).

Here, even assuming that trial counsel's failure to request the jury charge was equivalent to deficient performance, Morgan has not met the second prong of the *Strickland* test in that he has not shown that there was a reasonable probability that the jury would have reached a different verdict had trial counsel requested the charge. The evidence of Morgan's guilt was overwhelming; particularly devastating was the testimony of the youth who identified Morgan as the gunman in the Mitsubishi Montero, the testimony of the Volvo carjacking victim, and the testimony of the forensic officer who recovered Morgan's fingerprints from both the Montero and the Volvo.

Even if the charge was given and the jury thereby discounted the testimony of the unsequestered lead detective, it is highly probable that the jury would still have convicted Morgan of all charges. See, e.g., *Holt v. State*, 260 Ga. App. 826, 828 (1) (581 SE2d 257) (2003) ("[s]ince the evidence of [defendant's] guilt is overwhelming even when [the witness'] testimony is discounted, it is highly probable that the erroneous failure to charge . . . did not contribute to the jury verdict. . . . *McIntyre v. State*[, 266 Ga. 7, 10-11 (4) (463 SE2d 476) (1995)]."). As a result, the trial court's determination that Morgan failed to meet the requirements of *Strickland* was not clearly erroneous.

3. Morgan also claims that the trial court erred in failing to charge the jury sua sponte that, in determining the weight and credibility of the unsequestered lead detective's testimony, it could consider that he heard the testimony of other witnesses prior to testifying. "The failure to give an unrequested charge is reversible error when the omission is clearly harmful and erroneous as a matter of law in that the charge as given fails to provide the jury with the proper guidelines for determining guilt or innocence." (Citations and punctuation omitted.) *Kennedy v. State*, 277 Ga. 588, 591 (3) (592 SE2d 830) (2004). Here, the trial court properly charged the jury regarding their ability to consider the credibility of all witnesses. Given the overwhelming evidence of Morgan's guilt, as discussed in Division 2, supra, Morgan has failed to show that he was harmed by the trial court's failure to give the unrequested jury charge at issue.

4. Morgan claims that the trial court erred in admitting evidence of the two separate offenses as similar transactions. We disagree.

In order to protect an accused and to ensure him of a fair and impartial trial before an unbiased jury, the general character of an

accused is inadmissible unless the accused chooses to put his character in issue. *Williams v. State,* 261 Ga. 640 (409 SE2d 649) (1991). Evidence of a distinct, independent, and separate offense is inadmissible, "unless there is some logical connection between the two, from which it can be said that proof of the one tends to establish the other." *Cox v. State,* 165 Ga. 145 (1) (139 SE 861) (1927).

> Therefore, before any evidence of independent offenses or acts may be admitted into evidence, a hearing must be held pursuant to Uniform Superior Court Rule 31.3 (B). At that hearing, the [S]tate must make three affirmative showings as to each independent offense or act it seeks to introduce. The first of these affirmative showings is that the [S]tate seeks to introduce evidence of the independent offense or act, not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility.

(Footnote omitted.) *Williams,* supra, 261 Ga. at 642 (2) (b). Here, the trial court held a *Williams* hearing to determine the admissibility of the evidence of the independent offenses. At that hearing, the State showed that the independent offenses were introduced as evidence of Morgan's bent of mind, modus operandi, and course of conduct, which are proper purposes under *Williams.* See *Gardner v. State,* 273 Ga. 809, 810 (2) (546 SE2d 490) (2001).

The second affirmative showing required to admit evidence of an independent offense is "that there is sufficient evidence to establish that the accused committed the independent . . . act[,]" and the third required showing is "that there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter." *Williams,* supra, 261 Ga. at 642 (2) (b). Here, Morgan's fingerprints, as well as those of his friend Dominic Brown, were found in the Volvo involved in the January 2, 2004 robbery, and one of the victims of the December 11, 2003 robbery identified Brown as one of his assailants. All three offenses were connected by time and location; each involved two assailants, the use of firearms, and the robbery of the victims' clothing, including their pants. Like the robbery of the two brothers, for which Morgan was charged, the robbery of the Savannah State College student and his friend involved assailants jumping out of a dark-colored SUV and robbing two young adults or youths traveling on foot. Such evidence was sufficient to satisfy the latter two prongs of the *Williams* test, and the trial court specifically found that the State had properly made the required showings under *Williams.* See id. at 642, n. 3.

5. Morgan also claims that the trial court erred in admitting his custodial statements into evidence. We disagree.

Here, the trial court conducted a *Jackson-Denno* hearing and determined that Morgan's statements were voluntarily given after Morgan was advised of his *Miranda* rights. See *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964). "Unless clearly erroneous, a trial court's findings relating to the admissibility of an incriminating statement will be upheld on appeal." *Carter v. State*, 257 Ga. 510, 513 (3) (361 SE2d 175) (1987).

Morgan offered nothing to rebut the testimony of the police officers, who claimed that Morgan was questioned only after he was advised of his *Miranda* rights and signed a waiver indicating his willingness to provide a statement, and such waivers were introduced into evidence at the *Jackson-Denno* hearing. The trial court was authorized to base its ruling on the testimony and credibility of the officers, and Morgan's claim is therefore without merit. *Daniel v. State*, 268 Ga. 9, 10 (2) (485 SE2d 734) (1997).

6. Morgan also claims that the trial court erred in allowing the State to impeach his friend Dominic Brown after Brown testified that he did not remember whether police officers had asked him whether he and Morgan had been in a Mitsubishi Montero or who had owned such vehicle. See *Johnson v. State*, 255 Ga. 552, 556 (4) (a) (341 SE2d 220) (1986) ("[W]here a witness merely states that he does not remember, he cannot be impeached by the showing of former statements with respect to the facts which he claims not to remember.") (punctuation omitted). Here, instead of refreshing Brown's recollection, the State impeached his credibility with evidence of his prior convictions. Morgan failed to object to the introduction of the prior convictions, however, so any claim that the trial court erred in admitting such evidence was waived. See *Armstrong v. State*, 264 Ga. 237, 239 (3) (442 SE2d 759) (1994).

7. Finally, Morgan claims that there was insufficient evidence to sustain his convictions. As discussed herein, however, evidence was presented from which a rational trier of fact could determine that Morgan committed the armed robbery of the two brothers in violation of OCGA § 16-8-41 and that he committed such felony while in the possession of a firearm in violation of OCGA § 16-11-106. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Smith, P. J., concurs. Barnes, C. J., concurs fully and specially.*

BARNES, Chief Judge, concurring fully and specially.

Although I concur fully with the majority opinion, I write separately to emphasize that OCGA § 24-9-61 grants parties *"the right* to have the witnesses of the other party examined out of the hearing of

each other." (Emphasis supplied.) Consequently, allowing the lead investigator to remain in the courtroom during the presentation of the State's case is an exception to the rule, and the Code section obligates the trial courts to "take proper care to effect this object as far as practicable and convenient. . . ." Id.

Thus, even though it is not unusual for trial courts to allow lead investigators to remain in the courtroom, the prosecution has no right to an exception to the rule, and whether to grant the exception requires the exercise of the trial court's discretion. *Welch v. State*, 251 Ga. 197, 201 (7) (304 SE2d 391) (1983). The better practice, as suggested in *Carter v. State*, 271 Ga. App. 588, 590 (610 SE2d 181) (2005), is for the trial court to make some inquiry into the matter and determine whether the exception is warranted before exercising its discretion to grant or deny a request for an exception to the rule.

DECIDED SEPTEMBER 17, 2007.

*Emory B. Bazemore*, for appellant.
*Spencer Lawton, Jr., District Attorney, George R. Asinc, Assistant District Attorney*, for appellee.