## S09A0242. THORPE v. THE STATE.
### (678 SE2d 913)

HUNSTEIN, Presiding Justice.

Appellant Michael Thorpe was convicted and sentenced to life plus forty consecutive years in prison for murder and related charges arising from a botched attempted robbery in downtown Savannah. Thorpe challenges his convictions and sentences on multiple grounds; finding no error, we affirm.[1]

---

[1] The crimes were committed on December 24, 2005. On April 26, 2006, Thorpe, together with co-defendants Webster Wilson and Kevin Huckabee, was indicted by the Chatham County grand jury on one count of malice murder and three counts of felony murder (predicated, respectively, on aggravated assault with a deadly weapon, aggravated assault with intent to rob, and possession of a firearm by a convicted felon) in connection with the shooting death of victim Jennifer Ross; one count of aggravated assault with a deadly weapon and one count of aggravated assault with intent to rob, as to victim Brett Finley; one count of possession of a firearm during the commission of the crime of murder; one count of possession of a firearm during the commission of the crime of aggravated assault; and one count of receiving stolen property. Thorpe and his co-defendants were tried before a jury December 8-18, 2006. Thorpe was found guilty on all charges except that of malice murder and aggravated assault with a deadly weapon; the three felony murder charges merged by operation of law. Thorpe was sentenced to life in prison for felony murder; twenty years consecutive for aggravated assault with intent to rob; five years consecutive for each of the possession of a firearm charges; and ten years consecutive for receiving stolen property. Thorpe's timely motion for new trial, as

Viewed in the light most favorable to the verdict, the evidence adduced at trial reflected that, in the early morning hours of December 24, 2005, appellant, co-defendant Wilson, and appellant's uncle, Sean Thorpe, were riding around downtown Savannah in a grey Ford Taurus driven by co-defendant Huckabee. Earlier that evening, appellant and his three companions had been telling friends gathered at a friend's apartment that they needed to "get a lick," which meant commit a robbery, because they needed some Christmas money. After losing sight of their first robbery target, the foursome spotted victims Ross and Finley walking down the street with two friends, Elizabeth Sprague and Brannen Miles, slightly behind them. Appellant and Wilson, both armed with guns, exited the car with Sean Thorpe, while Huckabee waited in the car. Appellant and Wilson hid as the victims approached; Sean Thorpe went behind a nearby tree.

As the victims walked by, appellant and Wilson jumped out and hit Finley on the head with his weapon, whereupon the gun discharged. A round from a different gun was fired and struck Ross. Sean Thorpe fled the scene on foot upon hearing the gunshots; appellant, Wilson, and Huckabee fled in the Taurus and picked up Sean Thorpe shortly thereafter. Finley survived the attack. Ross, however, died of her gunshot wound a few days later. Expert testimony established that two bullet casings recovered from the crime scene had markings consistent with being fired from weapons in the possession of appellant and Wilson on the night of the crime.

At trial, Finley identified Wilson as his attacker. Sprague, who had witnessed the attack, also identified Wilson as the one who had hit Finley with his gun. Miles, though unable to positively identify any of the perpetrators, testified that as he was fleeing he saw one of the attackers get into a grey Ford Taurus. Finley and Miles both testified that there were three people involved in the attack.

These events were also related by Sean Thorpe, who testified for the State and also authenticated a secretly recorded telephone conversation between him and appellant, in which appellant confirmed that he shot the murder victim. Other witnesses testified as to various statements made by appellant acknowledging that the robbery had gone awry because the murder victim "bucked" when they had tried to get her purse. In addition, Thorpe testified as to the foursome's agreement to conceal their roles in and knowledge of the crime and described how, after Ross' death became public, he helped appellant and Wilson dispose of appellant's gun in a river.

---

amended, was heard on May 22, 2007 and denied on August 15, 2008. Thorpe filed a notice of appeal on August 25, 2008. His appeal was docketed in this Court on October 23, 2008 and submitted for decision on the briefs.

Trial testimony also established that the gray Ford Taurus driven by Huckabee on the night of the crime had been stolen, at the request of appellant and Huckabee, by a friend of the three co-defendants from a car dealership at which he worked.[2]

1. The evidence as described above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that appellant was guilty of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The trial court did not abuse its discretion by excepting the State's lead detective, Don McCutcheon, from the rule of sequestration where the prosecutors maintained that they needed Detective McCutcheon on hand to assist with the orderly presentation of the State's case due to the large number of prosecution witnesses and exhibits. *Warner v. State*, 281 Ga. 763 (2) (642 SE2d 821) (2007). The decision to grant an exception to the rule of sequestration will not be disturbed absent manifest abuse of discretion. *Lewis v. State*, 283 Ga. 191 (4) (657 SE2d 854) (2008).

3. Appellant asserts error with respect to the trial court's rulings regarding six members of the jury venire. Specifically, appellant contends that the trial court erred in denying defense motions to strike for cause Jurors Merritt, Hansen, Cuillo, and Evans, and for granting the State's motions to strike for cause Jurors Henderson and Jones.

> Whether to strike a juror for cause lies within the sound discretion of the trial court. [Cit.] Before a juror is excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence. [Cits.]

*Somchith v. State*, 272 Ga. 261, 262 (2) (527 SE2d 546) (2000). Whether or not a prospective juror is qualified must be determined based on a consideration of the voir dire as a whole. *Greene v. State*, 268 Ga. 47, 49 (485 SE2d 741) (1997).

> An appellate court should not substitute its own finding for that of the trial court, since it must pay deference to the trial court's determination. [Cits.] This deference encompasses the trial court's resolution of any equivocations and conflicts in the prospective jurors' responses on voir dire. [Cits.]

Id.

---

[2] The State also introduced a certified copy of a 2002 felony conviction of appellant for theft by receiving stolen property.

(a) Defense counsel moved to strike Juror Merritt for cause because of a voir dire response to the effect that she would not be able to decide the question of the defendants' guilt based on the evidence presented in court rather than what she may have heard about the crime, as well as her statements that "I'm kind of not being impartial" and "I sound like I have really set my — I already have my mind set." However, immediately following the last quoted comment, on questioning by defense counsel as to whether she did in fact have her mind set already, she responded, "Actually, I don't, because I don't know these gentlemen." She also testified that, while she had heard about the crime, she had heard nothing about evidence connecting the defendants to the crime. At the end of her questioning, she stated that it was the evidence that would determine whether or not the defendants were guilty. The trial court did not abuse its discretion in determining that Juror Merritt was capable of setting aside her opinion and deciding the case based on the evidence. See *Somchith*, supra, 272 Ga. at 262 (2).

(b) Defense counsel moved to strike Juror Hansen for cause because he replied affirmatively when asked whether he felt "that the State has satisfied any burden at this point because these three men are here today" and whether he was "looking for these defendants to explain something to him about why they're here." However, Juror Hansen also responded affirmatively when asked whether he understood that it was the State that bears the burden of proving guilt beyond a reasonable doubt. He also stated repeatedly that he could decide the case based on the evidence and that he had formed no opinion as to these particular defendants' guilt or innocence. Though Juror Hansen's responses were admittedly equivocal regarding the burden of proof, we cannot find that the trial court abused its discretion in finding Juror Hansen qualified. See *Greene*, supra, 268 Ga. at 50-54 (trial court's assessment of equivocal testimony entitled to deference).

(c) Defense counsel moved to strike Juror Cuillo for cause based on her statement that she believed the defendants were guilty because "that's what I've read in the papers and heard on the news" and because she answered affirmatively when asked whether she would expect the defendants to put up some type of defense to prove that they were not guilty. However, Juror Cuillo qualified her response by noting that she had not seen any of the evidence and also testified that she understood the defendants were presumed innocent. Her responses, in fact, demonstrated the seriousness with which she regarded her potential responsibilities as a juror and underscored her willingness to set her opinion aside and decide the case based on the evidence and the court's instructions. Under these circumstances, the trial court did not err by refusing to strike Juror

Cuillo for cause. See *Robertson v. State*, 268 Ga. 772 (6) (493 SE2d 697) (1997) (prospective juror need not be ignorant of facts and issues involved in a case).

(d) Defense counsel moved to strike Juror Evans for cause because she answered affirmatively when asked whether, if the defendants did not present any evidence, she would take that into consideration in her deliberations, and whether she would "like to hear from" the defendants at trial. However, after additional questioning from counsel, Juror Evans, who was clearly unfamiliar with the legal system, demonstrated that she was fully prepared to follow the court's instructions regarding the burden of proof. Accordingly, the trial court did not abuse its discretion by refusing to strike Juror Evans. See *Greene*, supra, 268 Ga. at 54.

(e) On the State's motion and over defense objections, the trial court struck Juror Henderson for cause. During voir dire, Juror Henderson repeatedly expressed his view that the system would probably not be fair to the defendants and, when pressed further on this point, responded, "[d]on't worry about it." Following the trial court's admonition about the importance of responding fully to the questions posed, Juror Henderson continued to express skepticism about whether the defendants would get a fair trial. While Juror Henderson did state that he thought he could be fair and impartial, a juror's personal assessment as to his own impartiality is not determinative. See *Lively v. State*, 262 Ga. 510 (1) (421 SE2d 528) (1992). In light of Juror Henderson's obvious mistrust of the prosecution generally, the trial court did not abuse its discretion in excusing him for cause. See *Somchith*, supra, 272 Ga. at 262 (2).

(f) On the State's motion and over defense counsel's objections, the trial court excused Juror Jones for cause. During voir dire, Juror Jones expressed his opinion that the State should be held to a "beyond a shadow of a doubt" burden of proof and affirmed upon extensive questioning that he would be unlikely to return a guilty verdict if there were proof that any of the State's witnesses had agreed to plea deals. Juror Jones also gave cryptic answers when questioned about what he would do if his strongly-held religious beliefs conflicted with the court's instructions. The trial court was appropriately concerned with Juror Jones' apparent reluctance to follow the rules of the court and thus was within its discretion in striking him for cause. See *Somchith*, supra, 272 Ga. at 262 (2).

4. Appellant next contends that the trial court erred by denying his motion to sever. In cases in which the death penalty is not sought, the issue of whether to sever the trials of co-defendants is a matter within the discretion of the trial court. OCGA § 17-8-4. To be entitled to severance, a defendant " 'must make a clear showing of prejudice and a consequent denial of due process.' . . . [Cit.]" *Howard v. State*,

279 Ga. 166, 172 (4) (611 SE2d 3) (2005). Factors to be considered in this determination include (1) whether a joint trial will create confusion of evidence or law; (2) whether there is a risk that evidence admissible against one defendant will be improperly considered against another despite cautionary instructions to the contrary; and (3) whether the co-defendants will present antagonistic defenses. *Griffin v. State*, 273 Ga. 32 (2) (537 SE2d 350) (2000).

In moving for severance, appellant cited only the "volatile relationships" and "irreconcilable differences" among the various defense attorneys, the prosecutor, and the lead detective. Though appellant now claims on appeal that severance was warranted because co-defendants' defenses were antagonistic to his, appellant waived this ground by failing to raise it in the trial court. See *Mason v. State*, 262 Ga. App. 383, 384 (2) (585 SE2d 673) (2003) (severance claim raised for first time on appeal is waived). Moreover, contrary to his present argument, appellant stated plainly in his written motion to sever that "the defendants are presenting consistent defenses," a fact borne out at trial, in which none of the three testified or offered any evidence, choosing instead to challenge the State's case. In addition, appellant has failed to cite, nor has our review of the record revealed, any evidence that created a problem for appellant under *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968) (admission of co-defendant's statement inculpating defendant, where co-defendant declines to testify, deemed prejudicial error).[3] There is likewise no indication that the jury confused the evidence or law; all three defendants were charged with identical crimes, and the jury, in reaching different verdicts as to each co-defendant, proved itself amply capable of distinguishing the evidence relevant to each.[4] Under these circumstances, the trial court did not err by denying appellant's motion to sever.

5. Appellant contends that the trial court erred by permitting witness Jonathan Tolbert to testify regarding a conversation he participated in, which other testimony established took place on the day after the crime, in which appellant and his co-defendants stated that "[appellant] shot the girl and [Wilson] had hit the boy with the gun." Specifically, appellant asserts that the court improperly applied the hearsay exception for statements of co-conspirators, see OCGA § 24-3-5, by allowing the State to introduce the statement

---

[3] As discussed below, various inculpatory statements made by appellant's co-defendants and testified to by witnesses at trial were admissible as statements by co-conspirators during the pendency of or in the concealment phase of the conspiracy. See OCGA § 24-3-5 and Divisions 5 and 8, infra.

[4] For example, while finding appellant guilty on all three counts of felony murder, the jury found his co-defendants guilty on only one of the three counts.

without first establishing a prima facie case of conspiracy. OCGA § 24-3-5 provides that "[a]fter the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." Notwithstanding the first clause of the Code section, we have previously held that such hearsay statements are admissible when the State at some point before the close of evidence establishes a prima facie case of conspiracy independent of the co-conspirator statement. See *Fallings v. State*, 232 Ga. 798 (1) (209 SE2d 151) (1974). Accord *Blalock v. State*, 250 Ga. 441 (2) (298 SE2d 477) (1983).

Here, the State presented ample evidence, in the form of testimony from Sean Thorpe and at least one other witness present with appellant and his co-defendants in the hours immediately prior to the crimes that the three, together with Sean Thorpe, planned to commit a robbery that night. Inasmuch as "[a] conspiracy may be shown by proof of 'an agreement between two or more persons to commit a crime,'" (footnote omitted) *Brooks v. State*, 281 Ga. 14, 15 (2) (635 SE2d 723) (2006), this evidence was sufficient to make a prima facie case of conspiracy. There was additional evidence, in the form of testimony regarding the efforts to dispose of the guns used in the crimes and the Ford Taurus, of a further agreement among appellant and his co-defendants to conceal their role in the crime. See *Copeland v. State*, 266 Ga. 664 (2) (a) (469 SE2d 672) (1996) (testimony of one co-conspirator sufficient prima facie evidence of conspiracy to enable admission of another co-conspirator's statement to third parties). The hearsay statement to which Tolbert testified, made the day after the crimes were committed, was clearly within the concealment phase of the conspiracy and was thus admissible under OCGA § 24-3-5. See *Copeland*, supra, at 665 (2) (finding statements by co-conspirators to third parties other than police admissible as made during concealment phase). Accordingly, we find no merit in this enumeration of error.

6. Appellant contends that the trial court erred by admitting into evidence the secretly-taped telephone conversation between appellant and Sean Thorpe in which appellant replied affirmatively to Thorpe's statement that "if you wouldn't have shot [the murder victim], we'd have been all right." The trial court held a hearing regarding the recording, at which Sean Thorpe testified that, after deciding to cooperate with police, he agreed to assist in recording a telephone conversation between him and appellant.

Appellant asserts that because Thorpe was acting as an agent of the State unbeknownst to appellant at the time of the conversation, the statement was involuntarily made and thus inadmissible under the due process clauses of the United States and Georgia Constitu-

tions, respectively, and under OCGA §§ 24-3-50 and 24-9-20. Whether a statement was voluntarily made is determined based on the totality of the circumstances. *Vergara v. State*, 283 Ga. 175 (1) (657 SE2d 863) (2008). We have long held that the mere fact that an incriminating statement was procured through artifice or deception does not render the statement involuntary as long as the means employed were not calculated to elicit an untrue statement. *Moore v. State*, 230 Ga. 839 (1) (199 SE2d 243) (1973). In this case, the elicitation of appellant's unguarded response to a perceived confidante regarding the circumstances of the crimes in which they had both participated was clearly designed to procure an unfiltered, genuine statement from appellant. Further, "absent any evidence that the police investigative techniques were designed to induce the 'slightest hope of benefit or . . . fear of injury,' the resulting statements are not rendered involuntary and inadmissible under OCGA § 24-3-50. [Cits.]" *DeYoung v. State*, 268 Ga. 780, 789 (8) (493 SE2d 157) (1997). Because neither incentives nor threats were involved in appellant's decision to converse with Thorpe, there was no violation of OCGA § 24-3-50. Under these circumstances, the admission of appellant's recorded statement was not clearly erroneous. See id.[5]

7. Appellant next contends that the trial court erred by failing to include in its jury instructions a charge on voluntariness of confessions and consideration of statements, admissions, and confessions. See OCGA §§ 24-3-50, 24-3-53. However, appellant failed to request such a charge,[6] and thus he is precluded from now asserting error on that basis. See *Welch v. State*, 235 Ga. 243 (2) (219 SE2d 151) (1975) (trial court need not give instruction on voluntariness of confessions absent specific request therefor).

> Moreover, in light of the fact that this was not a case in which [appellant's] confession[7] was uncorroborated by any other evidence, and the fact that the voluntariness of the confession was properly determined . . . , no harmful error

---

[5] As appellant concedes, because appellant was not in police custody at the time of his conversation with Thorpe, his Fifth Amendment rights are not implicated herein. See *Sewell v. State*, 283 Ga. 558 (2) (662 SE2d 537) (2008). Accordingly, his claim under Georgia's analogue to the Fifth Amendment, OCGA § 24-9-20, must also fail. See *Jordan v. State*, 239 Ga. 526 (3) (239 SE2d 69) (1977) (predecessor to OCGA § 24-9-20 governed by same standards as Fifth Amendment).

[6] Though it appears that co-defendant Huckabee requested such a charge, the record does not reflect, nor does appellant contend, that he joined in that request.

[7] Whether characterized as a confession or merely an incriminating statement, "[i]t has long been the law in this State that the rule as to the admissibility of an incriminatory statement is the same as that applied to a confession. [Cits.]" *Vergara*, supra, 283 Ga. at 177 (1).

could have flowed to [appellant] from the court's failure, without a request, to charge the substance of [OCGA § 24-3-53].

Id. at 246-247 (2). This enumeration of error is without merit.

8. Finally, appellant contends that the trial court erred by admitting the recorded statement of Rashawn Seabrook into evidence. Seabrook, an acquaintance of appellant and his co-defendants, had given a statement to police prior to trial detailing statements appellant had made in his presence regarding the crime. When called at trial, Seabrook recanted this statement, claiming he had fabricated it under pressure from police. Over objection, the court admitted the statement, which was played for the jury. In it, Seabrook stated that appellant had bragged about the crime, reporting that he shot Ross because she "bucked" and predicting that the eyewitnesses were too intoxicated to be able to identify them. Seabrook's statement corroborated other details, related to him by the co-defendants and Sean Thorpe, regarding the crime itself and the subsequent attempts to dispose of instrumentalities of the crime.

Though appellant now intimates, citing *Beecher v. Alabama*, 408 U. S. 234 (92 SC 2282, 33 LE2d 317) (1972), that the admission of Seabrook's statement was erroneous because Seabrook was impaired by medication and alcohol at the time he gave it, this ground for objection was never raised in the trial court and is thus now waived. See generally *Mason*, supra, 262 Ga. App. at 384 (2). Inasmuch as appellant is alleging the court erred in overruling his objection based on *Bruton*, supra, the statement was properly admitted as evidence of statements made by co-conspirators during the pendency of the criminal project. OCGA § 24-3-5; *Copeland*, supra, 266 Ga. at 665-666 (2), (3) (a). Moreover, Seabrook's testimony that his recorded statement was "all . . . lies" laid the foundation for its introduction as a prior inconsistent statement, admissible for both substantive and impeachment purposes. See *Knight v. State*, 266 Ga. 47 (2) (464 SE2d 201) (1995) (prior inconsistent statement of witness who takes the stand and is subject to cross-examination admissible as substantive evidence). We find no merit in this enumeration.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 29, 2009.

*Emory B. Bazemore*, for appellant.

*Spencer Lawton, Jr., District Attorney, Christine S. Barker, Assistant District Attorney, Thurbert E. Baker, Attorney General, David A. Zisook, Assistant Attorney General*, for appellee.